587 A.2d 319

**Eleanor M. DEICHERT,**

v.

**Robert G. DEICHERT, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 4, 1990.

Filed Feb. 26, 1991.

416

Janet J. Siracuse, Asst. Public Defender, Stroudsburg, for appellant.

Richard J. Shiroff, Easton, for appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

MONTEMURO, Judge:

This appeal arises from an Order of the Court of Common Pleas of Northampton County, dated February 9, 1990, designating certain marital obligations previously enumerated in the final order and divorce decree of January, 1988, as "alimony, maintenance and support" for purposes of non-dischargeability in Bankruptcy.

Appellee, Eleanor M. Deichert,[1] filed a Complaint in Divorce against appellant, Dr. Robert Deichert, on December

---

1. As of June 20, 1988, Eleanor M. Deichert resumed her maiden name and is now known as Eleanor Jean Mock.

19, 1980. The trial court appointed a Master in August, 1983, and, after a series of hearings, his report was subsequently filed in July of 1987. On January 19, 1988, the trial court denied and dismissed all exceptions to the Master's Report,[2] and entered a final decree, divorcing the parties and incorporating the Master's recommendations. Neither party appealed. On May 4, 1988, the trial court entered an additional order, directing appellant to comply with the January 19, 1988 final order within twenty (20) days, subject to contempt of court.

Approximately eight (8) months after the final decree was issued, appellant filed a voluntary petition for Chapter VII bankruptcy in the United States Bankruptcy Court in the Middle District of Pennsylvania (No. 5–88–00519). In his petition, he described himself as married but separated. Appellee was not listed as a creditor in any required Schedule A statements (concerning debtor liabilities), and appellant listed the marital residence and a 1980 Oldsmobile stationwagon as real and exempt assets respectively, although both of these items had been granted to appellee pursuant to the January 19, 1988 order.

Appellee was never notified of the meeting of appellant's creditors as required by Section 341 of the Bankruptcy Code. However, she did file a Complaint for Turnover of Non–Estate Property in the Bankruptcy Court on October 15, 1988. This complaint requested, inter alia, that the Bankruptcy Court refuse to discharge appellant's obligations under the January 19, 1988 and May 4, 1988 orders of the trial court.

On November 23, 1988, the Honorable Thomas C. Gibbons, Bankruptcy Judge, entered a Discharge of Debtor Order releasing appellant from all personal liability for debts existing on the date the bankruptcy case was instituted. Debts determined nondischargeable were not included, and the order expressly declined to address "any pending

---

**2.** Although appellant filed exceptions to the Master's Report, he failed to brief them. The trial court therefore regarded them as waived, and addressed only appellee's exceptions in its Opinion.

complaint to have a debt declared nondischargeable." *In re Robert Deichert*, No. 5–88–00519, Discharge of Debtor Order (Bankr.M.D.Pa., November 23, 1988).

Subsequently, appellee filed a Motion for Relief From Automatic Stay and further moved to consolidate this request with her previously filed Complaint. On August 24, 1989, Judge Gibbons approved a stipulation, signed by all parties, lifting the automatic stay. Appellee immediately thereafter petitioned the Northampton County Court of Common Pleas to enforce its equitable distribution Order and to penalize appellant for contempt.

At the hearing on appellee's enforcement petition, held September 29, 1989, appellant stipulated that he had not complied with the prior orders of court, arguing that his obligations had been discharged by the Bankruptcy Court. After submission of briefs, President Judge Alfred T. Williams entered an Order and Opinion of Court, dated February 9, 1990, designating the various marital obligations previously addressed in the decree and final order of January 9, 1988, as either dischargeable or non-dischargeable in bankruptcy, and, further imposing a fine of $1,000 per day, to commence twenty (20) days from the date of the Order, should appellant fail to comply with those obligations determined non-dischargeable. This appeal follows.

Appellant raises two (2) issues for consideration before this court:

(1) DID THE TRIAL COURT ABUSE ITS DISCRETION IN HOLDING APPELLANT IN CONTEMPT OF COURT FOR FAILURE TO PERFORM THE COURT–ORDERED OBLIGATIONS OF JANUARY 19, 1988 AND MAY 4, 1988.

(2) DID THE TRIAL COURT ERR IN CONCLUDING THAT CERTAIN OF APPELLANT'S COURT–ORDERED OBLIGATIONS WERE NON–DISCHARGEABLE IN BANKRUPTCY.

For reasons which appear below, we affirm the order and opinion of the trial court regarding the non-dischargeability

of the designated marital obligations, and we decline to address the contempt issue as it is not ripe for our review.

## I. NON–DISCHARGEABILITY

Appellant's basic contention is that none of his obligations under the January 19, 1988 court order were properly determined to be non-dischargeable in bankruptcy.[3]  In the February 9, 1990 amended order, which determined dischargeability, it was found that: (1) appellant's equity interest in the medical building, valued at $25,000, and the husband's interest in his pension, valued at $45,114.58, were dischargeable;  and, (2) all other dispositions as listed in the January 19, 1988 order remained with appellee as non-dischargeable obligations.

The governing provision of the Bankruptcy Code, 11 U.S.C.S. § 523(a)(5), states:

§ 523.  EXCEPTIONS TO DISCHARGE

(a) A discharge under section 727, 1141, or 1328(b) of this title [11 USCS § 727, 1141, or 1328(b) ] does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record

---

3.  Appellee seeks to argue that appellant has waived his right to claim that the marital obligations of the January 19, 1988 order of court are dischargeable as he failed to list her as a creditor pursuant to Rule 1007(b)(1) of the Bankruptcy Code.  Although appellee is correct in stating that appellant failed to list her as a creditor for purposes of Chapter 7, and although it appears that he has committed various frauds upon the bankruptcy court, it is not within this court's province to assert that he is now estopped from claiming dischargeability in bankruptcy.  Judge Gibbons specifically permitted any pending issue of dischargeability to be litigated in the state court.  See Discharge of Debtor Order, November 23, 1988.  It was appellee's burden to file a Motion to Dismiss Discharge in Bankruptcy upon finding fraud on the court.  *In re Ford,* 78 B.R. 729 (Bankr.E.D.Pa.1987).  Further, a debtor's refusal to list ex-wife as creditor, despite his knowledge of her claim, does not warrant dismissal absent prejudice to wife.  *Id.*  As appellee was aware of appellant's pending bankruptcy and proceeded accordingly in preserving her claims, she has not been prejudiced.  *Id.* at p. 732.

or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ...

11 U.S.C.S. § 523 (Law.Co-op.1990).

The dischargeability of marital obligations by bankruptcy proceedings has rarely been approached in the Pennsylvania state courts. However, that issue was recently presented to a panel of this court in *Buccino v. Buccino*, 397 Pa.Super. 241, 580 A.2d 13 (1990), which provides clear guidelines.

Preliminary, it must be noted that "... bankruptcy courts and state courts exercise concurrent jurisdiction over the question of whether a particular obligation is dischargeable under section 523(a)(5) of the Bankruptcy Code." *Buccino, supra,* 397 Pa.Superior Ct. at 247–248 n. 6, 580 A.2d at 16 n. 6, *citing* Official Notes of Advisory Committee on Bankruptcy Rules, in the notes accompanying Rule 4007(b). Once dischargeability has been fully and fairly litigated in the state court, the debtor is collaterally estopped from relitigating the issue in Bankruptcy court. *Buccino, supra,* 397 Pa.Superior Ct. at 248, 580 A.2d at 16. Further, "[W]hat constitutes alimony, maintenance or support is to be determined according to federal bankruptcy law, not state law." *Zimmerman v. Zimmerman,* 322 Pa.Super. 121, 469 A.2d 212, 214 (1983), *citing Matter of Lesher,* 20 B.R. 543 (Bankr.W.D.Pa.1982) (citations omitted). However, since there is no federal domestic relations law, and since the state court formulated the original marital obligations pursuant to state law, "[i]t would be impossible to disregard state domestic relations law in determining the nature of an obligation the very existence of which is dependent on state law." *Buccino, supra* 397 Pa.Super. at p. 249, 580 A.2d at p. 17. Therefore, when determining dischargeability under the Bankruptcy Code, the court is to follow federal law, employing state law considerations in its analysis.

The inquiry leading to a determination of the dischargeability status of an obligation is tripartite. The trial court must: (1) view all circumstances present at the time of the divorce decree; (2) apply the guidelines provided by the bankruptcy court; and, (3) determine if the obligation is dischargeable. *Buccino, supra* 397 Pa.Super. at 261–262, 580 A.2d at 23; *In re Jenkins*, 94 B.R. 355, 360–61 (Bankr. E.D.Pa.1988) (citations omitted). Further, it is the moving party's burden to set forth sufficient evidence to support his or her contention that the obligations are nondischargeable. *In re Alloway*, 37 B.R. at 423.

■■■■ Analysis of the facts and the law must be made in conjunction with two countervailing principles: (a) the bankruptcy court's fundamental goal of providing an economic "fresh start" to the honest debtor; and, (b) the congressional policy of giving first priority to the adequate financial maintenance of a debtor's children and ex-spouse. *Buccino, supra* 397 Pa.Super. at 250 n. 12–13, 580 A.2d at 17–18 n. 12–13, *citing Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Alloway*, 37 B.R. 420 (Bankr.E.D.Pa.1984); *In re Schmiel*, 94 B.R. 373 (Bankr.E.D.Pa.1988). The basis of an inquiry into dischargeability under section 523(a)(5) is to question whether the particular debt (obligation) was created to perform a support function. To be taken into account in this determination are all relevant economic and non-economic factors, including the living standards of the parties.[4] *Buccino,*

---

**4.** Specifically, the factors to consider, as enumerated in *Buccino,* are:
    a.  the label given to the obligation in the underlying instrument;
    b.  the express terms of the obligation;
    c.  whether the debt terminates on the occurrence of death, remarriage, etc.;
    d.  the economic disparity between the parties;
    e.  whether there are minor children in the care of the creditor spouse;
    f.  whether the support award would have been adequate absent the liability in question;
    g.  the intention of the court to provide support to the creditor spouse or children;
    h.  the age, employability and educational levels of the parties;

*supra* 397 Pa.Super. at p. 262, 580 A.2d at p. 23, *citing In re Lineberry,* 55 B.R. 510, 517 (Bankr.W.D.Ky.1985). The substance and function of the debt are to control the determination, rather than the form or title given the debt. *Buccino, supra* 397 Pa.Super. at 251, 580 A.2d at 18; 11 U.S.C.S. § 523(a)(5)(B) (Law. Co-op.1990). Further, "... if a specific obligation in connection with a divorce is labelled property division or 'equitable distribution,' such designation will not preclude a finding that the debt is, in fact, in the nature of alimony or support and, consequently, not dischargeable." *Buccino, supra* 397 Pa.Super. at 251, 580 A.2d at 18, *citing In re Shine,* 802 F.2d 583 (1st Cir.1986) (citations omitted). A court is to look at both the intent of the parties and/or the divorce court and the effect/function of the obligation. *Buccino, supra* 397 Pa.Super. at 253, 580 A.2d at 19.

In assessing the propriety of the trial court's findings, we must decide whether its determination that certain of the marital obligations were exempt from discharge in bankruptcy was "clearly erroneous." *Buccino, supra* 397 Pa. Super. at 256 n. 20, 580 A.2d at 21 n. 20, *citing In re Calhoun,* 715 F.2d 1103, 1110 (6th Cir.1983) (citation omitted); *In re Alloway,* 37 B.R. 420, 425 (Bankr.E.D.Pa.1984).

■ Regarding the trial court's findings that the marital residence and the 1980 stationwagon were non-dischargeable obligations of the husband, we find that the consideration to be afforded these assets has been waived. Unlike *Buccino,* wherein this court determined that the appeal from the findings of the trial court was not in the nature of a challenge to the propriety and/or equity of the original

i. whether the creditor spouse suffered an economic disadvantage as a result of the marriage;
j. the language of the decree and the inferences which can be drawn therefrom;
k. whether the debts are payable directly to the former spouse;
l. the circumstances leading to the dissolution of the marriage; and,
m. the financial resources, actual or potential, of each spouse.
*Buccino, supra* 397 Pa.Super. at 254, 580 A.2d at 19–20, *citing In re Alloway,* 37 B.R. at 425 (citations omitted).

award [5], we find that appellant is attempting to challenge the propriety and equity of the dispositions of the marital residence and 1980 stationwagon in the January 9, 1988 final order. As appellant failed to preserve these contentions pursuant to Pa.R.App.P. 902 and 903(a), he cannot now attempt to raise these issues in a bankruptcy/dischargeability proceeding.[6]

Support for the above waiver can be found in certain of the appellant's actions throughout the lengthy and convoluted divorce and bankruptcy proceedings. Initially, although he had failed to file effective exceptions to the Master's report awarding the marital residence and the stationwagon to appellee, and had not appealed the final decree confirming this award, appellant listed these items as his property in the bankruptcy petition.[7] These properties had already been given to wife pursuant to the final order of January, 1988; and, the divorce decree effectively terminated any property rights of husband with regard to these properties. *See Lyall v. Lyall*, 240 Pa.Super. 649, 652, 361 A.2d 367, 369 n. 1 (1976); Title 23 P.S. § 55. (An appeal may properly be taken as soon as the divorce decree is entered since the

5. In *Buccino*, on appeal were determinations that certain monetary valuations of gifts, alimony, pension funds and a trailer in the possession of the husband, were non-dischargeable in bankruptcy proceedings. No appeal and/or exceptions were filed after the decree and final order was entered; and, six months after the decree/final order, husband filed bankruptcy. In husband's bankruptcy petition, husband listed wife as a secured and/or unsecured creditor concerning the marital obligations imposed by the divorce decree preceding bankruptcy. This court stated that "[t]o the extent that the instant appeal makes reference to or challenges the propriety and equity of the original award, such allegations are wholly waived." *Buccino v. Buccino*, 397 Pa.Super. 241, 246 n. 5, 580 A.2d 13, 15 n. 5 (1990). However, we found that no issues before the court involved a challenge to the propriety and/or equity of the original award.

6. Rules 902 and 903(a) of the Pennsylvania Rules of Appellate Procedure require that, in order to appeal a final order of court, including a decree in divorce and a final order therefrom, a party must file a notice of appeal with the clerk of the lower court, within the time allowed [thirty (30) days].

7. In Schedule B-1, entitled "Statement of All Property of Debtor—Real Property", appellant lists the marital residence; and, in Schedule B-2, entitled "Statement of All Property of Debtor—Personal Property", he lists the 1980 Oldsmobile Stationwagon.

decree terminates all property rights and duties of either party.)  Appellant further failed to list appellee as a creditor, but instead stated that he was married but separated, listing appellee as debtor's spouse.  See Schedule of Current Income and Expenditures, September 8, 1988.  This was also in direct contravention of the divorce decree and final order of January, 1988.  Finally, in support of appellant's intent to avoid and challenge the January, 1988 order, Judge Williams stated in closing that "[a]t the very least, [husband's] conduct has been reprehensible throughout the conduct of the divorce proceedings. . . .  Although we recognize, as we must, the altruistic notions behind granting a debtor a fresh start through bankruptcy proceedings, a recalcitrant spouse seeking to avoid a support obligation should not be permitted to hide behind the skirts of federal law."  See Opinion of the Court, February 9, 1990.  We do not find that this was an erroneous conclusion.  All of the above factors support the finding that husband was attempting to challenge the equity and/or propriety of awarding the marital residence and 1980 stationwagon to wife.  Appellant's attempt to avoid the obligations imposed on him pursuant to the January, 1988 order by filing for bankruptcy eight months later, amounts to an attempt to gain a windfall through bankruptcy.  This is expressly prohibited by the United States Supreme Court's holding that " . . . [u]niform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' "  *In re Wilson*, 85 B.R. 722 (Bankr.E.D.Pa. 1988), *citing Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) *quoting Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961) (footnote omitted in original).

■  However, even if appellant had not waived this issue, the trial court's determination that the marital residence, furnishings and 1980 stationwagon were mainte-

nance and support is correct under the principles enunciated in *Buccino.*

With regard to the residence and furnishings, appellee suffered considerable economic disadvantage during the marriage. She put her nursing career on hold for approximately twenty years in order to be wife, mother and homemaker. Further, her financial resources are considerably less than those of the appellant, and are likely to remain that way.[8] These considerations warrant a finding that the marital residence and furnishings were a means of shelter, a necessary aspect of support. *Buccino, supra* 397 Pa.Super. at 262, 580 A.2d at 23, *citing In re Swiczkowski,* 84 B.R. 487 (Bankr.N.D.Ohio 1988).

Further, as transportation can be classified as maintenance, for purposes of non-dischargeability, the trial court was correct in holding that the 1980 Oldsmobile stationwagon was non-dischargeable. As stated in *In re Swiczkowski,* reliable transportation is an essential item for a family and children. The vehicle can provide necessary support for a family. *Buccino, supra* 397 Pa.Super. at 261 n. 24, 580 A.2d at 23 n. 24, *citing In re Swiczkowski,* 84 B.R. at 492. As appellant received the parties' other automobile, appellee should not be deprived of transportation, as it is a necessary adjunct to support her reasonable needs as mother and homemaker.

Appellant's court ordered payment of the mortgage on the marital residence is also a non-dischargeable debt under section 523(a)(5). As stated in *Buccino,* "[B]ankruptcy courts have consistently held that the assumption of mortgage debts by a debtor-spouse which enables the creditor-spouse to provide for or remain in the marital residence are not dischargeable in bankruptcy because they are in the nature of support, alimony or maintenance." *Buccino, supra* 397 Pa.Super. at 260, 580 A.2d at 22, *citing In re Sweeny,* 99 B.R. 192 (Bankr.D.Conn.1989); *In re*

8. Husband's future earning capacity was valued at approximately $2,000,000.00. Wife's future earning capacity was valued at $193,-068.00.

*Gianakas*, 100 B.R. 787 (Bankr.W.D.Pa.1989); (citations omitted); *In re Thomas*, 21 B.R. 571 (Bankr.E.D.Pa.1982). *See also Buccino, supra* 397 Pa.Super. at 260–261, 580 A.2d at 23, *citing In re Thomas*, 21 B.R. at 574. (An obligation to maintain and support a family includes the obligation to keep a roof over their heads.) Further, the trial court was correct in holding the $100,000 lien on appellant's medical building non-dischargeable, as the lien was used to ensure compliance with the obligation to provide alimony and property to appellee for her support, obligations appellant has consistently attempted to avoid.

■ Finally, regarding appellant's responsibility for the parties' joint debts, the trial court properly took into account such factors as the economic disparity between the parties, the employability and educational levels of the parties and the economic disadvantage to the creditor spouse as a result of the marriage in finding this obligation as support to appellee. Based upon those findings, the joint debts are non-dischargeable and the trial court's classification as maintenance and support was not error.

## II. CONTEMPT OF COURT

Appellant's second issue concerns his challenge to the trial court's imposition of civil contempt. We decline to address any of appellant's several arguments on this issue, as we find it to be interlocutory and unappealable.

■ As stated in *Hester v. Bagnato*, "[t]his Court has jurisdiction of 'all appeals from *final orders* of the courts of common pleas ...'" *Hester v. Bagnato*, 292 Pa.Super. 322, 323, 437 A.2d 66, 67 (1981), *citing* 42 Pa.C. S.A. § 742 (emphasis on original). In civil contempt proceedings, final adjudication involves five steps: 1) rule to show cause why attachment should not issue; 2) answer and hearing; 3) rule absolute; 4) hearing on contempt citation; and, 5) adjudication of contempt. *Whitt v. Philadelphia Housing Authority*, 325 Pa.Super. 135, 140, 472 A.2d 684, 686 (1984), *citing Commonwealth ex. rel. Maga-*

*ziner v. Magaziner,* 434 Pa. 1, 5–6, 253 A.2d 263, 266 (1969) (citations omitted). From the certified record in this case, it would appear that there has been no final adjudication of contempt as there has been no issuance of a rule absolute nor a hearing on contempt citation as required. Therefore, appellant's claim proceeds from an interlocutory order and not now before us.

In concluding, we would note that appellant has succeeded in abusing the procedures of the courts of this state and has effectively delayed performing the obligations imposed upon him by marriage and subsequent divorce. Such actions amount to a flagrant abuse of the administration of justice, and, further, create undue hardship and injustice to his wife and children.[9]

For all of the foregoing reasons, we affirm the order of the trial court as regards the non-dischargeability of the designated marital obligations; and, we dismiss that part of the instant appeal making reference to the imposition of civil contempt.

---

9. We must also note the apparent discrepancy between the intent of the bankruptcy court, to provide relief for an *honest debtor,* and the intent of the state's divorce code, to give first priority to the adequate financial maintenance of a debtor's children and ex-spouse. In the instant case, appellant has shown himself to be far less than honest in his dealings with the court. Yet we are constrained to affirm the discharge of certain debts (namely the pension and interest in the medical partnership) which are under the principles of equitable distribution due and owing to appellee, but for appellant's access to the bankruptcy courts. Husband's actions, in effect, amount to an attempt to nullify the divorce decree. Our state court system has provided an adequate remedy for such challenges pursuant to either party's right to appeal a final order in divorce. Allowing appellant the opportunity to avoid the final order and distribution by filing for bankruptcy is inconsistent with the intention of both the bankruptcy and domestic relations statutes. However, until this ploy is legislatively rendered impossible, our decision must stand.