620 A.2d 1363

**Crystal R. MIDDLETON**

v.

**Brian K. MIDDLETON.**

**No. 36, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 16, 1993.

628

Jane C. Murphy (Carolyn W. Evans, and Cynthia Dietz, Student Attys., on brief), Baltimore, for appellant.

Jill Coleman, amicus curiae, for Organization for the Enforcement of Child Support, Inc.

Karen R. Johnson (C. Christopher Brown, Brown, Goldstein & Levy, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The issue presented in this case is whether Maryland Constitution, Article III, § 38,[1] prohibits use of civil contempt to enforce a defaulting parent's court decreed child support obligation when the accrued arrearages have been reduced to judgment. The answer lies in the historical evolution of § 38 and case law.

## I.

In *Brown v. Brown*, 287 Md. 273, 412 A.2d 396 (1980), we considered the purpose of § 38 and of its various amendments to that time. As originally enacted, the *Brown* Court pointed out, "the provision simply read 'No person shall be imprisoned for debt' " and it continued in that form for nearly one hundred years. *Id.* at 277, n. 2, 412 A.2d at 398 n. 2. By amendment in 1950, there was excluded from the prohibition "a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children or for alimony." *Id.* The 1962 amendment added to the exclusion "the support of an illegitimate child or children". *Id.* These amendments, in effect, modified the meaning of debt, as the courts had defined that term, *id.* at 281–282, 412 A.2d at 401, making uniform the treatment of "alimony ..., wife support and the support of dependent children...." *Id.* at 282, 412 A.2d at 401.

Stating that "[t]he evident purpose of the framers was to abolish the useless, and sometimes cruel, imprisonment of

---

1. Maryland Constitution, Article III, § 38, provides:

 No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony, (either common law or as defined by statute), shall not constitute a debt within the meaning of this section.

 This provision was originally enacted as § 44, Article III of the Constitution of 1864. It was last amended in 1982. That amendment expressly made the provision gender neutral and clarified what is meant by alimony.

persons who, having honestly become indebted to another, were unable to pay as promised," *id.* at 279–280, 412 A.2d at 400 (footnote omitted), citing *State v. Mace,* 5 Md. 337, 351 (1854), the Court noted that, early on a distinction was drawn "between 'debt' within the meaning of Section 38, and a legal 'duty' arising from or imposed by law," *id.,* 287 Md. at 280, 412 A.2d at 400, the latter not being subject to the prohibition. *Ruggles v. State,* 120 Md. 553, 564, 87 A. 1080, 1084 (1913); *State v. Nicholson,* 67 Md. 1, 4–5, 8 A. 817, 818 (1887); *Mace,* 5 Md. at 350–351. The debt/duty dichotomy's application in the domestic context was traced from *Dickey v. Dickey,* 154 Md. 675, 141 A. 387 (1928), through the 1962 amendment. *Id.* 287 Md. at 280–282, 412 A.2d at 400–01. The *Brown* court, discussing *Dickey,* noted that alimony was determined to be a "duty growing out of the marital relation and resting upon a sound public policy, and so . . . may be enforced by attachment of the person for contempt, and the defendant . . . imprisoned." *Id.* at 280–281, 412 A.2d at 400 (quoting *Dickey,* 154 Md. at 681, 141 A. at 390.) "On the other hand, wife support, contractually assented to upon dissolution of the marriage," was accorded a less favored status. *Id.* 287 Md. at 281, 412 A.2d at 400. Child support also received, before the constitutional amendment of 1950, a different, less favorable treatment, in terms of the § 38 prohibition, than did alimony. *Id.*

As indicated, the 1950 amendment had the effect of treating spousal support, alimony and child support the same for § 38 purposes. The Court opined that "what was sought to be and actually was, accomplished by the amendment was permission to enforce by imprisonment, if need be, the *legal* and *moral* obligation of support (when expressed in an equity decree) that parents owe to their children." *Id.* at 283, 412 A.2d at 401.

At issue in *Brown,* was whether a stepfather could be held in contempt for failure to support his stepdaughter after he had been divorced from her mother. The issue arose because the stepfather had executed a separation agreement requiring him to pay a specific amount for the

stepdaughter's support. Defining a dependent child as "an immediate offspring," *id.* at 284, 412 A.2d at 402 (quoting *Billingsly v. Bradley*, 166 Md. 412, 419, 171 A. 351, 354 (1934)), *i.e.*, "one who is entitled to support by virtue of a legal duty from another to provide it, independent of contract, without regard to whether the provisions of that agreement are incorporated into a judicial decree," *id.* 287 Md. at 283, 412 A.2d at 402, we held that contempt was not an available option. The Court concluded that any obligation of a stepfather to support a stepchild is contractual and, therefore, stands on a different footing from that of a father, whose obligation is a noncontractual duty to support his natural or adopted child. *Id.* at 284, 412 A.2d at 402. Consequently, we said, even though a valid court decree or agreement approved by decree for support of a dependent child is not a debt under section § 38, a contractual or decretal obligation accepted by a stepparent to support a stepchild is not an obligation to support a dependent child. *Id.* at 285–286, 412 A.2d at 403.

## II.

We have consistently held, both before 1950, *Kriedo v. Kriedo*, 159 Md. 229–231, 150 A. 720, 721 (1930); *Blades v. Szatai*, 151 Md. 644, 647, 135 A. 841, 842 (1927), and after, *Carroll County v. Edelmann*, 320 Md. 150, 170, 577 A.2d 14, 23 (1990), *Knill v. Knill*, 306 Md. 527, 531, 510 A.2d 546, 548 (1986); *Bledsoe v. Bledsoe*, 294 Md. 183, 193, 448 A.2d 353, 358–59 (1982); *Kerr v. Kerr*, 287 Md. 363, 367–368, 412 A.2d 1001, 1004 (1980); *Brown v. Brown*, 287 Md. 273, 281, 412 A.2d 396, 400 (1980); *Rand v. Rand*, 280 Md. 508, 510, 374 A.2d 900, 902 (1977); *Speckler v. Speckler*, 256 Md. 635, 637, 261 A.2d 466, 467; *Johnson v. Johnson*, 241 Md. 416, 419, 216 A.2d 914, 916 (1966); *Bradford v. Futrell*, 225 Md. 512, 518, 171 A.2d 493, 496, (1961); *McCabe v. McCabe*, 210 Md. 308, 314, 123 A.2d 447, 450 (1956), that a father has a common law duty to support his minor children. A mother has the same duty. *Edelmann*, 320 Md. at 170, 577 A.2d at 23; *Kerr*, 287 Md. at 367–368, 412 A.2d at 1004.

The source of the child support obligation has been variously described. In *Blades,* we said

> [t]he liability of the decedent for the support of his son is not founded on any contract, expressed or implied. It is simply a natural and legal duty, which is imposed on any father who brings a child into the world. When the court ... gave the custody of the lad to the father, it simply continued by implication that general duty. The obligation under the decree is still a personal one, and *does not constitute a debt of the parent.*

151 Md. at 654, 135 A. at 845 (emphasis added). In *Kriedo,* we recognized that

> [t]he implied obligation on the part of the father to pay for necessaries for the support of a minor child ... aris[es] by reason of the duty and obligation imposed upon the father by law to provide properly and reasonably for the support of minor children, according to their station in life and the financial ability of the father.

159 Md. at 232, 150 A. at 721–22. Yet another formulation is contained in *Edelmann*:

> Parenthood is both a biological and a legal status. By nature and by law, it confers rights and imposes duties. One of the most basic of these is the obligation of the parent to support the child until the law determines that he is able to care for himself. As it is the obligation of the parent to provide the support, so it is the right of the child to expect it. . . .
>
> The duty of parents to provide for the *maintenance* of their children is a principle of natural law; an obligation ... laid on them not only by nature herself, but by their own proper act, in bringing them into this world. . . . By begetting them, therefore, they have entered into a voluntary obligation. . . . And thus the children have the perfect *right* of receiving maintenance from their parents.

320 Md. at 170, 577 A.2d at 23–24 (quoting 1 W. Blackstone, *Commentaries* 447).

 Maryland Code (1991) § 5–203(b)(1) of the Family Law Article provides that parents "are jointly and severally responsible for the child's support, care, nurture, welfare, and education...." That provision, reflective of the common law, *Zouck v. Zouck,* 204 Md. 285, 298, 104 A.2d 573, 579 (1954), originally was enacted by the legislature in 1929, as Article 72A, § 1, of Bagby Annotated Code of Maryland. *See* Ch. 561, Laws of 1929. As originally enacted, Article 72A, § 1 charged both parents with the "care, nurture, welfare and education" of their minor child. Their responsibilities, "jointly and severally," for the support of that child were mandated when the section was amended by Ch. 678, Laws of 1951. Thus, since at least 1951, the child support obligation of a parent has been a " 'legal duty arising from or imposed by law.' " *Mace,* 5 Md. at 351. The obligation is not perfunctory, to be performed only at the voluntary pleasure or whimsical desire of the parent, *Palmer v. State,* 223 Md. 341, 351, 164 A.2d 467, 473 (1960), and it cannot be escaped even though the child is illegitimate. *Commonwealth of Virginia v. Autry,* 293 Md. 53, 61, 441 A.2d 1056, 1060 (1982). Moreover, the Legislature has made it a misdemeanor for "a parent ... willfully [to] fail to provide for the support of his or her minor child." *See* Maryland Code (1991) § 10–203 of the Family Law Article. Failure to provide child support as decreed may also be enforced by contempt. *Rutherford v. Rutherford,* 296 Md. 347, 364, 464 A.2d 228, 237 (1983); *Speckler,* 256 Md. at 637, 261 A.2d at 467; *Johnson v. Johnson,* 241 Md. 416, 419, 216 A.2d 914, 916 (1966).

### III.

 It is the substance of the obligation that the monetary claim represents, not the form that it takes, that is dispositive.[2] In *Zouck,* 204 Md. at 298–299, 104 A.2d at 579,

---

**2.** This principle is somewhat analogous to that applicable in other family law contexts. In valuing marital property, *see* Maryland Code (1991) § 8–201 of the Family Law Article, although it may have been

after recognizing the statutory basis for the father's child support obligation, the Court stated:

The fact that the father has recognized his obligation and has agreed in writing to meet it in a specified amount, does not change his duty to a debt nor does it create the relationship of ordinary contract debtor and creditor between the father and the child, or the father and the mother, as the representative of or trustee for the child. His obligation remains the same whether it be calculated and required by original order of court, by voluntary agreement, or by voluntary agreement specifically ordered to be performed by order of court. Nor is it significant that the mother ... has met the obligation which the father violated, so that the money he promised

---

used for marital purposes, property acquired by one spouse before the marriage, by inheritance or gift, excluded by valid agreement or directly traceable to any of those sources retains its character as nonmarital property. See *e.g. Pope v. Pope,* 322 Md. 277, 283–84, 587 A.2d 481, 484–85 (1991) (real property that son received from father as a gift was not marital property subject to monetary award in divorce proceeding, despite fact that title to property was taken by son and wife as tenants by entireties); *Bruce v. Dyer,* 309 Md. 421, 434, 524 A.2d 777, 783 (1987) (unless there is an agreement evidencing an intent to the contrary, the proceeds from the sale of land held by the entireties will continue to be held by the entireties); *Grant v. Zich,* 300 Md. 256, 274–75, 477 A.2d 1163, 1173 (1984) (residence was to be characterized as part nonmarital and part marital, notwithstanding its titling as tenants by entirety because marital residence was paid for in part by husband's nonmarital funds, in part by wife's nonmarital funds and in part by marital funds); *Harper v. Harper,* 294 Md. 54, 64, 448 A.2d 916, 930 (1982) (property purchased and paid for in part before marriage and in part during marriage with nonmarital and marital funds is considered both marital and nonmarital property); *Kline v. Kline,* 85 Md.App. 28, 40–41, 581 A.2d 1300, 1306 (1990), *cert. denied,* 322 Md. 240, 587 A.2d 246 (1991) (house purchased by husband and wife together prior to marriage was not marital property, and was not changed into marital property because of their subsequent marriage, as the change in form of co-ownership from joint tenancy to tenancy by entireties was not acquisition of property); *Schweizer v. Schweizer,* 55 Md.App. 373, 379–80, 462 A.2d 562, 566 (1983), *aff'd in part and remanded in part,* 301 Md. 626, 484 A.2d 267 (1984) (where acquisition of interest in real property is directly traceable to corporate stock acquired prior to marriage, that property is excluded from definition of marital property even though it became titled in husband's name after marriage).

to pay week by week, would now be paid, under court order, in a lump sum.... The fundamental nature of the support looked for by the agreement is not changed because the husband is now required to pay at one time what he should have paid week by week. (Citations omitted).

*See Haughton v. Haughton,* 319 Md. 460, 464–465, 573 A.2d 42, 43–44 (1990) (because the husband's agreement, made in a marital settlement agreement, to pay certain joint, consumer credit debts of the parties did not relate to support or alimony, its incorporation into the divorce decree did not change the obligation it imposed from a debt in the classic sense to an alimony or support obligation); *McAlear v. McAlear,* 298 Md. 320, 347–348, 469 A.2d 1256, 1272 (1984) (monetary award, payable in installments and based on similar factors, is not alimony, and, hence, it is not within the § 38 exception); *Roberts v. Roberts,* 160 Md. 513, 522, 154 A. 95, 99 (1931) (a wife's debts for necessaries are not converted to alimony by court order). See also *Deichert v. Deichert,* 402 Pa.Super. 415, 587 A.2d 319 (1991) in which that court stated that "[t]he basis of an inquiry into dischargeability under [Bankruptcy Code, 11 U.S.C. §] 523(a)(5) is to question whether the particular debt (obligation) was created to perform a support function.... The substance and function of the debt are to control the determination, rather than the form or title given the debt." *Id.* at 422–23, 587 A.2d at 322–23. It further opined that

if a specific obligation in connection with a divorce decree is labelled property division of "equitable distribution," such designation will not preclude a finding that the debt is, in fact, in the nature of alimony or support and, consequently, not dischargeable. A court is to look at both the intent of the parties and/or the divorce court and the effect/function of the obligation.

402 Pa.Super. at 423, 587 A.2d at 323. (Citations omitted).

The United States Supreme Court has recognized, *albeit* in the bankruptcy context, that the child support obligation is a duty, not a debt, *Wetmore v. Markoe* 196 U.S. 68, 76, 25

S.Ct. 172, 175, 49 L.Ed. 390, 393 (1904); *Dunbar v. Dunbar,*
190 U.S. 340, 351–52, 23 S.Ct. 757, 761, 47 L.Ed. 1084, 1092
(1903), and, further, that its essential nature is not changed
by the form that a specific claim takes. *Wetmore, supra;*
*Dunbar, supra; Audubon v. Shufeldt,* 181 U.S. 575, 21
S.Ct. 735, 45 L.Ed. 1009 (1901). Addressing the latter point,
the Court in *Dunbar* opined:

> At common law, a father is bound to support his legiti-
> mate children, and the obligation continues during their
> minority.... In this case the decree of the court provid-
> ed that the children should remain in the custody of the
> wife, and the contract to contribute a certain sum yearly
> for the support of each child during his minority was
> simply a contract to do that which the law obliged him to
> do; that is, to support his minor children ... We think it
> was not the intention of Congress, in passing a bankrupt-
> cy act, to provide for the release of the father from his
> obligation to support his children by his discharge in
> bankruptcy, and if not, then we see no reason why his
> contract to do that which the law obliged him to do should
> be discharged in that way. As his discharge would not in
> any event terminate his obligation to support his children
> during their minority, we see no reason why his written
> contract acknowledging such obligation and agreeing to
> pay a certain sum (which may be presumed to have been
> a reasonable one) in fulfillment thereof should be so
> discharged. It is true his promise to pay to the mother
> but on this branch of the contract it is for the purpose of
> supporting his two minor children, and he simply makes
> her his agent for that purpose.

190 U.S. at 351–52, 23 S.Ct. at 761–62, 47 L.Ed. at 1092–93.
Put another way,

> [A] decree awarding alimony to the wife or children, or
> both, is not a debt which has been put in the form of a
> judgment, but rather a legal means of enforcing the
> obligation of a husband and father to support and main-
> tain his wife and children. He owes this duty, not be-
> cause of any contractual obligation, or as a debt due to

the wife, but because of the policy of the law which imposes the obligation upon the husband.

*Wetmore*, 196 U.S. at 74, 25 S.Ct. at 174, 49 L.Ed. at 393. See *Howard v. Moore*, 580 N.E.2d 999, 1004 (Ind.App.1991) (Ex-husband's dissolution decree obligation designated as "alimony/maintenance" was nondischargeable in Chapter 7 case as being in the nature of alimony, support or maintenance). See also *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex.1992), in which the court characterized arrearages as:

> The function of child support is to help a custodial parent maintain an adequate standard of living for the child.... Characterizing arrearages as nothing more than a "debt" owed to the custodial parent ignores the reality that the child is frequently the one who has been harmed by nonpayment and it is the child's interests which are ultimately sought to be protected. The payment of arrearages compensates for the wrong to the child at least as much as it reimburses the custodial parent for monies spent on the child. Although the extent to which a child presently benefits from the payment of arrearages varies from case to case, past due child support is still more properly characterized as an unfulfilled duty to the child than a "debt" to the custodial parent.

## IV.

Crystal R. Middleton, the appellant, and Brian K. Middleton, Sr., the appellee, were married on April 27, 1987, and separated two and one-half years later. They entered into a Consent Order for Custody, Child Support and Visitation, the terms of which, the appellant was awarded temporary custody of the parties minor child and the appellee was to pay weekly child support of $75, payable pursuant to a Consent Earnings Withholding Order. When, after a short time, the appellee ceased making payments pursuant to the order, the appellant filed a motion for contempt and other relief. After a hearing, the trial court found the appellee in civil contempt for failure to make child support payments. Rather than make a disposition at that time, however, the

trial court set the matter for a review hearing to permit the appellee to purge the contempt.

The appellee failed to appear at the review hearing and a body attachment was issued. Subsequently, the appellant was granted a Judgment of Absolute Divorce, in which the prior consent orders were incorporated and the then current child support arrears were reduced to judgment.

Since the appellee has been located, his child support obligation has been met pursuant to a wage withholding order. The appellant, however, has sought to obtain payment of the arrears by invoking the court's contempt powers. While finding, after a hearing, that the appellee was indeed in contempt, the court concluded that once support arrears are reduced to judgment, the nonpaying parent may not thereafter be held in civil contempt for failure to pay those arrears. It therefore vacated its prior order finding the appellee in contempt and denied, with prejudice, the appellant's motion for contempt. We issued a writ of certiorari on our own motion.

## V.

The appellee does not argue that a parent's child support obligation is a debt, rather than a duty. Nor does he contend that the claim pursued by the appellant and represented by the judgment is for an obligation other than child support. He maintains, rather, only that, because the accrued arrearages were reduced to judgment by the court, the court's contempt power, because its utilization involves the possibility of imprisonment, may not be used to enforce the judgment. In effect, then, he is maintaining that a parent's child support obligation can be converted, by the enforcement method chosen, from a duty to a mere debt.

The constitutional provision prohibits imprisonment for debt. Although it does not define "debt", the exclusions from the prohibition, which it does contain, make clear that it does not include support obligations. Thus, the reach of the constitutional provision is not determined, nor meant to

be, by the method chosen to enforce the child support claim. The determination whether a particular obligation constitutes a debt within the contemplation of the constitutional provision depends upon the essential nature of that obligation. Once the nature of the obligation has been determined, the provision's reach has also been determined. We hold that since a parent's child support obligation is not a debt within the prohibition of § 38, the obligation of the defaulting parent may be enforced by means of the court's contempt power, including imprisonment, pending the purging of the default.

This holding is consistent with the result reached by sister courts that have considered the issue. In *Gibson v. Bennett,* 561 So.2d 565 (Fla.1990), the issue was whether Florida circuit courts have jurisdiction to enforce foreign judgments for arrearages of alimony or child support by equitable remedies, including contempt. The Court rejected an argument identical to that made in the instant case, *i.e.,* that reducing a support decree to a money judgment transforms the obligation it represents into an ordinary judgment debt, enforceable only by an action at law, *id.* at 568, and that the enforcement of a judgment for support by contempt violates the state constitutional prohibition against imprisonment for debt. *Id.* at 570. The Court held that "[e]stablishing a support decree as a money judgment does not destroy the decree as an order to pay support nor is the obligation reduced to an ordinary judgment debt enforceable at law.... The purpose of the award remains the payment of support to the former spouse or the child regardless of its form...." *Id.* at 569 (citation omitted). This is so because "[a] decree for support is different than a judgment for money or property: It is a continuing obligation based on the moral as well as legal duty of a parent to support his or her children." *Id.* (citations omitted). Thus, the Court concluded:

> To hold that such a judgment can be enforced only by execution at law would amount to depriving a support award of its inherent power of enforcement by contempt.

The courts have a duty to provide an effective, realistic means for enforcing a support order, or the parent or former spouse for all practical purposes becomes immune from an order for support. In our view, this duty includes enforcement of a judgment of support by equitable processes of the court because a remedy at law that is ineffective in practice is not an adequate remedy.

*Id.* at 569–70 (citation omitted).[3] *See also Ex Parte Wilbanks,* 722 S.W.2d 221, 224 (Tex.Ct.App.1986) ("[E]ven though the amount of child support arrearage may be reduced to judgment, neither the judgment nor the constitutional prohibition against imprisonment for debt is a bar to enforcing the child support order by contempt and confinement until the arrearage is paid. This results because the natural and legal duty of a parent to support his child is not a debt, but arises from that relationship.").

Permitting a parent's child support obligations to be enforced by contempt and, if necessary, imprisonment, is consistent with this State's policy of insuring that child support obligations are met and met to the extent necessary for the well-being of the child. *See e.g., Stambaugh v. Child Support Admin.,* 323 Md. 106, 113, 591 A.2d 501, 503 (1991) (Agreement between mother and father under which mother agreed to waive liability of father for past or future child support payments, in consideration for father's consent to adoption of his children by mother's husband, violated public policy and was invalid); *Commonwealth of Virginia v. Autry,* 293 Md. 53, 57, 441 A.2d 1056, 1058 (1982) (The Uniform Reciprocal Enforcement Support Act (URE-

---

3. To be sure, Florida, like many other states, *e.g.* Neb.Rev.Stat. § 42–369 (1988, 1991 Cum.Supp.); Or.Rev.Stat. § 107.095(2) (1991); Tex. Fam.Code Ann. § 14.41 (West 1986, 1991 Supp.), consistent with federal policy, has a statute which requires child support arrears automatically to be reduced to judgment. *See* Fl.Stat. § 61.17(3). The *Gibson* court did not, however, rest its decision on that ground. It specifically noted that the statute merely embodied preexisting public policy that equitable remedies, including contempt, are available to enforce a judgment for support arrearages. *Gibson v. Bennett,* 561 So.2d 565, 569 (Fla.1990).

SA), Maryland Code (1957, 1979 Repl.Vol.), Art. 89C, *et. seq*, must be liberally construed to authorize the Maryland courts to order child support commensurate with the child's current needs, not limited by previous court orders); *Pope v. Pope*, 283 Md. 531, 533, 390 A.2d 1128, 1130 (1978) (Unemployment Insurance Benefits are earnings within the meaning of Maryland Code (1957, 1973 Repl.Vol., 1977 Cumm.Supp.), Art. 16, § 5B, which permits a court to order a lien on earnings of person defaulting on a court order to pay support); *Lieberman v. Lieberman*, 81 Md.App. 575, 588, 568 A.2d 1157, 1163 (1990) ("State has a vested interest in requiring a responsible parent to support his or her child. Otherwise, the State could be responsible in whole or in part for the support of a minor child, even though a parent is financially able to meet those obligations.").

It is also in line with the congressional policy to enforce support obligations by parents. *See* 42 U.S.C. §§ 651–662 and 681–687 (1983 & 1988 Cum.Suppl.); 45 C.F.R. § 302 (1991). *See also Wehunt v. Ledbetter*, 875 F.2d 1558, 1561 (11th Cir.1989), *cert. denied, sub nom. Brown v. Ledbetter*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990); *Williams v. Patton*, 821 S.W.2d 141, 151–52 (Tex.1992).

## VI.

■ In ruling on the appellant's motion for contempt and other relief, the trial court said:

I find as a fact in this case and reiterate the finding that I made back on March 6th, 1991, that Mr. Middleton has the present—had then in March of 1991, the present ability to pay the support and today has the present ability to pay the support.

I further find that Mr. Middleton contemptuously, without excuse or justification, and in wilful disregard of the court's order requiring that he pay child support, both the original child support order, which for the record, was by consent signed by Judge Kaplan of this court on June 4, 1990, as well as my order, which is now vacated, of March

6, 1991, which required that he pay, I believe it was four hundred dollars within two weeks.

That Mr. Middleton wilfully refused to make those payments. And but for the October 15, 1991 Judgment of Divorce in this case, which among other things, reduced the three thousand, nine hundred sixty-nine dollars as of that time in child support payments to a money judgment, but for that money judgment, this court would proceed to consider an appropriate sanction of Mr. Middleton for the contempt he has otherwise committed.

So that my ruling is clear, I am not ruling whatsoever that Mr. Middleton is not in contempt of court. I am ruling just the contrary. He is indeed in contempt of court, but on account of the money judgment that has come into existence, I am satisfied that Maryland law does not permit this plaintiff to take advantage of the contempt sanction.[4]

The appellee argues that even if a child support obligation which has been reduced to judgment may be enforced by contempt, that may occur only when it is shown by clear and convincing evidence that no adequate legal remedy is available and that all other remedies have been exhausted. He relies upon *D.D. v. M.T.*, 550 A.2d 37, 43–44 (D.C.App.1988), in which it was held that civil contempt is a "drastic remedy" and requires proof by clear and convincing evidence.

---

**4.** The trial court's ruling appears to have been premised upon the constitutional provision providing protection against imprisonment for debt being "based on the equitable nature of the order. The equitable nature of the order to pay spousal support or child support rests on the theory that it really is not an order to pay money, it is an order to perform a duty, moral and legal, which is recognized in the law." The trial court's experience, and that of other experienced lawyers in the domestic relations area convinced him that the election of remedies doctrine applies and, therefore, contempt cannot be used to enforce a money judgment. The trial judge, then, viewed the enforcement mechanism, rather than the nature of the obligation, as being dispositive.

 It is well settled in this state that civil contempt, as opposed to criminal contempt, is remedial rather than punitive. *McDaniel v. McDaniel*, 256 Md. 684, 687–88, 262 A.2d 52, 54 (1970). We noted the difference between them in *State v. Roll and Scholl*, 267 Md. 714, 728, 298 A.2d 867, 876 (1973):

> A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive.

We have also addressed the respective burdens of proof they require: civil contempt is proven by the preponderance of the evidence; criminal contempt must be established beyond a reasonable doubt. *Giant of Md., Inc. v. State's Attorney*, 274 Md. 158, 168, 334 A.2d 107, 118 (1975); *Roll and Scholl*, 267 Md. at 728, 298 A.2d at 876; *Winter v. Crowley*, 245 Md. 313, 317, 226 A.2d 304, 307 (1967); *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 488, 77 A.2d 305, 310 (1950).

Despite its comments, for purposes of these proceedings, the court did not hold the appellee in contempt of court. Therefore, whether it applied the proper standard of proof in a civil contempt proceeding was not and, indeed, could not have been presented to the trial court for decision. Moreover, there is a difference between what must be proven to justify a civil contempt finding and what must be shown as a prerequisite to pursuing that remedy. The respondent proposes that we hold that what must be shown clearly and convincingly is that there are no adequate remedies at law. We have already held that the form of remedy or claim is not determinative of whether the con-

tempt powers may be used; rather it is the nature of the obligation sought to be enforced. In any event, whether one has, and can prove that he or she has, an adequate remedy at law is not part of the proof for civil contempt.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY THE APPELLEE.