810 A.2d 947

David S. **GOLDBERG**

v.

Robert Martin **MILLER.**

No. 8, Sept. Term 2002.

Court of Appeals of Maryland.

Nov. 8, 2002.

Glenn. M. Cooper, Bethesda (David S. Goldberg, Gaithersburg, on brief), for petitioner.

Cynthia E. Young, Annapolis, for respondent.

BELL, C.J. and ELDRIDGE, RAKER *, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J.

The petitioner in this case, David S. Goldberg, Esquire, ("Goldberg"), seeks review of the judgment of the Court of Special Appeals and asks this Court to determine whether guardian *ad litem* fees imposed pursuant to Maryland Code § 1–202 of the Family Law Article (1984, 1999 Repl.Vol.) (hereinafter "guardian *ad litem* fees") can be collected through garnishment of a federal retirement annuity under 5 C.F.R. § 581.307 (2002), which requires such fees to be treated as child support. Agreeing with the intermediate appellate court, we hold that a Circuit Court does not possess the authority to treat guardian *ad litem* fees as child support. We, therefore, affirm the judgment of the Court of Special Appeals.

## I. *Facts:*

Goldberg, licensed to practice law in the State of Maryland, became involved in a contentious divorce and child custody dispute between Robert Miller and Mary Miller on August 9, 1999, when the Circuit Court for Montgomery County appointed him guardian *ad litem* for the parties' minor son, Joseph. Goldberg's representation of Joseph continued until the Millers placed their settlement agreement on the record on November 8, 1999. The Circuit Court incorporated the transcript of that recorded settlement into its order of November 30, 1999, establishing the Millers' child custody, support, and visitation arrangements. Goldberg petitioned for guardian *ad litem* fees, which he was awarded on December 27, 1999

---

* Judge Raker participated in the oral argument but did not participate in the decision or the adoption of this Opinion.

pursuant to Maryland Code, § 1–202 of the Family Law Article.

On February 18, 2000, Mary Miller filed a motion for modification of child custody and other relief, which generated extensive further proceedings. Goldberg again became involved in the case when, on April 6, 2000, he filed a Response of Guardian *Ad Litem* to Plaintiff's Motion to Compel a Mental Examination of Robert Miller. On April 17, 2000, Mary Miller filed a petition to have Goldberg reappointed as guardian *ad litem*. Two days later, Goldberg filed a consent to the reappointment, which Robert Miller opposed. On May 26, 2000, the court entered an order requiring that all visitation by Robert Miller with Joseph be supervised and scheduled by Goldberg.

The court, on June 2, 2000, reappointed Goldberg to represent Joseph while the Millers continued to squabble over the modification to their child custody agreement. Accordingly, Goldberg served as Joseph's guardian *ad litem* until August 28, 2000 when the court entered a visitation modification order. On September 7, 2000, Goldberg petitioned for guardian *ad litem* fees in connection with his representation of Joseph from December 1, 1999 through October 19, 2000.

Robert Miller opposed the petition. In his opposition, Robert Miller stated that Goldberg should be denied his request for fees because his participation in the case unnecessarily prolonged the litigation. Robert Miller also suggested, in his opposition, that Goldberg did not serve the best interest of the child, but, rather, acted as a partisan of Mary Miller.

After holding two hearings on the fee issue, the court, on February 27, 2001, entered an award of $21,728.00 in attorney's fees to Goldberg, $14, 340.48 of which was to be paid by Robert Miller. The court ordered the remaining $7387.52 to be paid by Mary Miller. Robert Miller, a retired employee of the federal government, filed for bankruptcy the next day.

In an attempt to collect the judgment against Robert Miller, Goldberg wrote a letter requesting that the Circuit Court modify the award of counsel fees to describe it as being "in the nature of 'child support' for the benefit and support of the said

child." According to the request, the guardian *ad litem* fees, if properly characterized as child support, would enable Goldberg, under 5 C.F.R. § 581, to garnish Robert Miller's federal retirement benefits.[1]

In response to Goldberg's letter, the Circuit Court, on March 26, 2001, entered a Supplemental Order Awarding Attorney Fees to Guardian *Ad Litem* (hereinafter the "Supplemental Order"). The Supplemental Order, which is the subject of this appeal, provides in relevant part:

> ORDERED, that all fees awarded by this Court to David S. Goldberg, Esq., in his capacity as Guardian *Ad Litem* and as attorney for Joseph Miller, minor child of the parties in the above captioned case, are intended to be in the nature of child support recoverable for the support and benefit of the said minor child and within the definition of "Child Support" as set forth in 5 C.F.R. § 581.102(d).

This order encompassed both awards of guardian *ad litem* fees to Goldberg, the one entered on December 27, 1999 and the other entered on February 27, 2001. Robert Miller's motion to vacate the Supplemental Order was denied, and he appealed.

The Court of Special Appeals reversed the Circuit Court's decision. *Miller v. Miller*, 142 Md.App. 239, 788 A.2d 717 (2002). The Court of Special Appeals held that the Circuit Court erred in two respects. First, it held that the Circuit Court improperly modified the December 27, 1999 award of guardian *ad litem* fees because Goldberg's request for modification of that award was not filed within thirty days after the entry of the award, as required by Md. Rule 2–535(a).

Second, as to the February 27, 2001 award of guardian *ad litem* fees, the court held that the Circuit Court exceeded its

---

1. The record below does not describe clearly the exact nature of Robert Miller's federal retirement income. Goldberg, in his brief, refers to the federal income as a "federal retirement annuity." Petitioner's Brief at 5. Robert Miller calls the income "federal retirement benefits." Respondent's Brief at 4. Whatever it is, the parties in this case do not dispute that the retirement income is subject to garnishment under 5 C.F.R. § 581.

authority by treating guardian *ad litem* fees as child support. The court based this conclusion on its reading of Maryland statutory child support provisions under Maryland Code, § 12–204 of the Family Law Article, which provides certain criteria that courts must consider in computing child support awards. Relying on the rule of statutory construction, *expressio unis est exlusio alteris* (i.e., the expression of one is the exclusion of another), the court reasoned that the Legislature's omission of guardian *ad litem* fees from the criteria under Section 12–204 "constitute[d] a statement that the [L]egislature did not intend for legal fees to be treated as child support."

Goldberg petitioned this Court for a Writ of Certiorari, which we granted. *Goldberg v. Miller,* 368 Md. 526, 796 A.2d 695 (2002). In his petition, Goldberg challenged only the portion of the opinion of the Court of Special Appeals that concerned the Circuit Court's February 27, 2001 award of guardian *ad litem* fees. For clarity, we have rephrased the question on appeal as follows: "Under Maryland law, did the Circuit Court possess the authority to treat guardian *ad litem* fees as child support?" [2] Affirming the judgment of the Court of Special Appeals, we hold that the Circuit Court did not possess such authority because the treatment of guardian *ad litem* fees as child support is inconsistent with the Maryland statutory scheme for child support.

## II. Discussion

### A. *5 C.F.R. § 581, the Federal Regulation*

Because the Supplemental Order refers specifically to 5 C.F.R. § 581.102(d), it is useful to begin by exploring the

---

**2.** Goldberg's brief presented the following question:

Are legal fees awarded pursuant to § 1–202(2) of the Family Law Article, *Code of Maryland,* to a guardian *ad litem* appointed to represent a minor child in a domestic proceeding in the nature of "child support" for purposes of 5 C.F.R. § 581.102(d) and 5 C.F.R. § 581.307 relating to the collection of such fees from a judgment debtor's federal retirement annuity?

federal scheme. By authority of 42 U.S.C.A. § 661,[3] the Office of Personnel Management promulgated 5 C.F.R. § 581, entitled Processing Garnishment Orders for Child Support and/or Alimony. Section 581.101 states, in relevant part:

[M]oneys, the entitlement to which is based upon remuneration for employment, due from, or payable by, the United States ... to any individual, shall be subject, in like manner and to the same extent as if the United States ... were a private person:

(1) To legal process for the enforcement of an obligor's legal obligations to provide child support, alimony, or both, resulting from an action brought by an individual obligee....

5 C.F.R. § 581.101. Therefore, the regulation permits garnishment of income for federal employment, including retirement income, to the same extent as any other income if the obligation underlying the garnishment is one for either child support or alimony or both. Before the regulation can operate with respect to a child support obligation, however, the

---

**3.** In section 501(c) of the Tax Reduction and Simplification Act of 1977, Congress granted the President authority to promulgate regulations for the implementation of 42 U.S.C.A. § 659 insofar as it applies to moneys due or payable by the executive branch of the Government. President Carter, by executive order, delegated his authority to promulgate these regulations to the Office of Personnel Management. Exec. Order No. 12105, 3 C.F.R. 262 (1979), *reprinted in* 42 U.S.C.A. § 661 (1991). The substantive portion of the statute, 42 U.S.C.A § 659 (2001), provides:

Notwithstanding any other provision of law ... moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title and regulations of the Secretary under such subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

"obligation" must meet the regulation's definition of child support. The regulation defines child support as:

> [T]he amounts required to be paid for the support and maintenance of a child, . . . which provides for monetary support, health care, arrearages or reimbursement, and which may include other related costs and fees, interest and penalties, income withholding, attorney's fees, and other relief.

5 C.F.R. § 581.102(d). Under this definition, attorney's fees may be considered child support. Determining when a particular award of attorney's fees qualifies as child support, though, turns on a whether the award meets the several requirements of 5 C.F.R. § 581.307. That section provides:

> Before complying with legal process that requires withholding for the payment of attorney fees, . . . the government entity [from which the federal benefits are payable] must determine that the legal process meets both of the following requirements:
>
> (a) The legal process must expressly provide for inclusion of attorney fees . . . as (rather than in addition to) child support . . .;
>
> (b) The awarding of attorney fees . . . as child support . . . must be within the authority of the court, authorized official, or authorized State agency that issued the legal process. It will be deemed to be within the authority of the court, authorized official, or authorized State agency to award attorney fees as child support . . . if such order is not in violation of or inconsistent with State or local law, even if State or local law does not expressly provide for such award.

5 C.F.R. § 581.307. The section, therefore, imposes three requirements: (1) the award of attorney's fees must come through a "legal process"; (2) the "legal process" must expressly describe the attorney's fees as child support; and (3) the court issuing the legal process must possess the authority to treat attorney's fees as child support. We will address each of these requirements in turn.

The first requirement of 5 C.F.R. § 581.307 involves the definition of the term "legal process." Legal process, under this regulation, is defined as:

[A]ny writ, order, summons, notice to withhold income pursuant to subsection (a)(1) or (b) of section 666 of title 42, United States Code, or other similar process in the nature of garnishment, which may include an attachment, writ of execution, court ordered wage assignment, . . . and which—

(1) Is issued by:

(i) A court of competent jurisdiction, including Indian tribal courts, within any State, territory, or possession of the United States, or the District of Columbia . . . and

\* \* \*

(2) Is directed to, and the purpose of which is to compel, a government entity, to make a payment from moneys otherwise payable to an individual, to another party to satisfy a legal obligation of the individual to provide child support, alimony or both.

5 C.F.R. § 581.102(f). Stated more simply, to qualify as a "legal process" under this regulation, the process must come through some form in the nature of garnishment, such as a writ, order, or summons, it must have been issued by a court of competent jurisdiction, and it must have been issued for the purpose of garnishing federal wages.

The Supplemental Order in the present case does qualify as a "legal process" under 5 C.F.R. § 581.102(f) because it was issued as an order by a Maryland Circuit Court, a court of competent jurisdiction. The Supplemental Order also specifically refers to 5 C.F.R. § 581, the regulation that allows for the garnishment of income payable by the federal government, as required. As a qualified "legal process," therefore, the Supplemental Order satisfies the first prong of 5 C.F.R. § 581.307.

To meet the second requirement of 5 C.F.R. § 581.307, the "legal process" must expressly provide for the inclusion of attorney's fees as child support. The language of the Supplemental Order expressly described the guardian *ad litem* fees

as "in the nature of child support recoverable for the support of and benefit of the said minor child and within the definition of 'Child Support' as set forth in 5 C.F.R. § 581.102(d)." By using this explicit language, the court made it clear that the award for guardian *ad litem* fees was to be included as child support. The Supplemental Order, as a result, meets the second requirement of 5 C.F.R. § 581.307.

The third and final aspect of 5 C.F.R. § 581.307 that we must determine is whether the "awarding of attorney fees ... as child support [was] within the authority of the court ... that issued the legal process." § 581.307(b). The court possesses the "authority" to award attorney fees as child support if the order "is not in violation of or inconsistent with State or local law." *Id.* The question, therefore, becomes whether the Circuit Court's treatment of guardian *ad litem* fees as child support violated or was inconsistent with Maryland law. Upon examining the history and provisions of Maryland's statutory scheme for child support awards, we conclude that the Circuit Court's treatment of guardian *ad litem* fees as child support was inconsistent with Maryland law.

### B.  *Child Support*

█  A close examination of Maryland's statutory scheme for child support leads us to the conclusion that the General Assembly did not intend that guardian *ad litem* fees be deemed part of child support. We reach this conclusion for two reasons. First, the Legislature elected not to include guardian *ad litem* fees under its scheme for identifying child support. Second, were guardian *ad litem* fees treated as child support, we believe such treatment inappropriately could subject the debtor to possible imprisonment through contempt proceedings and could affect adversely the best interest of children by attorney's fees displacing other more direct expenses.

### 1.  *Statutory Scheme for Child Support Awards*

When called upon to interpret a statute, we adhere to our well established principles of statutory construction. Recent-

ly, in *Witte v. Azarian*, 369 Md. 518, 801 A.2d 160 (2002), we stated that:

> [W]hen engaged in [statutory interpretation], our goal is to ascertain and implement, to the extent possible, the legislative intent. In so doing, we look first to the words of the statute, on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant. If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

369 Md. at 525–26, 801 A.2d at 165. The relevant statutes in the case *sub judice* are silent on the subject of whether guardian *ad litem* fees may be described as child support, so we must look beyond the mere language of the statute to elucidate legislative intent.

■ In arriving at its conclusion, the Court of Special Appeals relied, almost exclusively, on the maxim of statutory construction known as *expressio unis est exlusio alteris* (i.e., the expression of one thing is the exclusion of another). Although we recognize this maxim to be a useful interpretive device, it should be used with caution and not as a rule of law. *Hylton v. Mayor and City Council of Baltimore*, 268 Md. 266, 282, 300 A.2d 656, 664 (1972); *Kirkwood v. Provident Savings Bank*, 205 Md. 48, 55, 106 A.2d 103, 107 (1954); *see Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 379, 697 A.2d 424, 426 (1997). Accordingly, we prefer to focus on other recognized indicia of legislative intent, such as the statutory scheme for child support, its relation to other laws, and the legislative history.

■ We find it instructive to examine briefly, at the outset, the background of child support in Maryland. This Court has long recognized the parents' obligation to support their minor children. *See Carroll County v. Edelmann,* 320 Md. 150, 170, 577 A.2d 14, 23 (1990); *Kriedo v. Kriedo,* 159 Md. 229, 231, 150 A. 720, 721 (1930); *Blades v. Szatai,* 151 Md. 644, 647, 135 A. 841, 842 (1927). This obligation imposes a duty on the parent to provide support and confers a right on children to receive it. *Middleton v. Middleton,* 329 Md. 627, 632, 620 A.2d 1363, 1365 (1993) (quoting *Edelmann,* 320 Md. at 170, 577 A.2d at 23–24). In *Middleton,* we stated that the child support obligation "is not perfunctory, to be performed only at the voluntary pleasure or whimsical desire of the parent...," *Id.* at 633, 620 A.2d at 1366 (citations omitted).

■ In accordance with these principles, treating an award as child support significantly elevates the level of protection it receives under the law. For example, if a court order is deemed to be child support, the one to whom the obligation is owed can collect the obligation through the court's contempt powers. *Lynch v. Lynch,* 342 Md. 509, 519, 677 A.2d 584, 589 (1996) ("Thus, notwithstanding that the proceedings are civil in nature, a defendant may be imprisoned for civil contempt."); *see* Md. Rule 15–207(e) (2001) (allowing a court to find one in constructive civil contempt for failure to pay spousal or child support). Indeed, under the Constitution of Maryland, which prohibits imprisonment for debt, only child support and alimony awards are explicitly exempted from the meaning of debt. Md. Const. Art. III, § 38. A court, therefore, may employ its contempt powers, including the power to imprison, against one who refuses to comply with an order to pay child support. *Rutherford v. Rutherford,* 296 Md. 347, 364, 464 A.2d 228, 237 (1983).

■ Because an obligation to pay child support creates an enforceable duty of the parent, a trial court may not select, at its complete discretion, which of its orders should be deemed child support. Instead, the trial court must adhere to the Legislature's plan for calculating the amount and character of

a child support award. *See Drummond v. State,* 350 Md. 502, 511–12, 714 A.2d 163, 168 (1998); *Walsh v. Walsh,* 333 Md. 492, 498, 635 A.2d 1340, 1343 (1994) (observing that the court is required to apply the statutory guidelines in determining child support). This structure, commonly known as the Child Support Guidelines (the "Guidelines"), first appeared in Maryland law in 1989 to provide courts with a standard formula for determining child support awards. 1989 Md. Laws ch. 2.

In *Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992), Judge Chasanow, writing for this Court, described the purpose and impetus for enacting the Guidelines:

The General Assembly enacted these guidelines in 1989 to comply with federal law and regulations. *See* 42 U.S.C. §§ 651–667 (1982 & 1984 Supp. II) and 45 C.F.R. § 302.56 (1989). The federal mandate required that the guidelines be established and "based on specific descriptive and numeric criteria and result in a computation of the support obligation." *Id.* When drafting the guidelines, the Maryland Senate Judicial Proceedings Committee had before it *Development of Guidelines For Child Support Orders: Advisory Panel Recommendations and Final Report,* U.S. Department of Health and Human Services' Office of Child Support Enforcement. This report explained that the need for the guidelines was threefold: (1) to "remedy a shortfall in the level of awards" that do not reflect the actual costs of raising children, (2) to "improve the consistency, and therefore the equity, of child support awards," and (3) to "improve the efficiency of court processes for adjudicating child support. . . ."

327 Md. at 322, 609 A.2d at 321 (footnote omitted).

■ The Guidelines provide courts with uniform criteria that they must consider in awarding child support. The enumerated criteria consist of calculations to be used in computing the amount one party owes to another in child support. *Petrini v. Petrini,* 336 Md. 453, 460, 648 A.2d 1016, 1019 (1994). The calculations include: (1) the schedule of basic support obligations, which provides the court with an amount

of child support based on the combined actual income of the parents and the number of children needing support, *id.* § 12–204(a)(f); (2) any actual child care expenses due to either parent's employment, *id.* § 12–204(g); (3) extraordinary medical expenses, *id.* § 12–204(h); (4) any special or private school expenses, *id.* § 12–204(i); and (5) any expenses for the transportation of the child between the parents' homes, *id.* § 12–204(i). Without question, the General Assembly intended any award based on these enumerated factors to be treated as child support.

■ Outside of the Guidelines, the Legislature has provided two other possible sources of child support awards. The provisions addressing these sources, not surprisingly, are found under the Child Support Title, Title 12 of the Family Law Article. Under Section 12–102(b), the trial court "may include *in any support order* a provision requiring either party to include the child in the parent's health insurance coverage." Code, § 12–102(b) of the Family Law Article (emphasis added). The effect of such an order is to require one party to pay the costs associated with maintaining a health insurance policy for the child. The plain language of this section expressly allows the court to order a parent to include the child within that parent's health insurance coverage and to undertake to pay these costs as child support. Consequently, like the enumerated factors under the Guidelines, an order to include a child in a parent's health insurance coverage may be treated as child support.

■ An order to pay child support may also include, under Section 12–101(d)(1)(ii), any expenses related to "medical support for the child, including neonatal expenses." Code, § 12–101(d)(1)(ii) of the Family Law Article. Although the words of the statute do not expressly provide that an award of these expenses may be treated as an award for child support, the legislative history of this section makes it clear that medical support and neonatal expenses were intended to be part of the child support scheme.

In 1994, the General Assembly passed an extensive act affecting various titles of the Family Law Article. 1994 Md.

Laws ch. 113. The act's central purpose was to strengthen Maryland's child support enforcement system. *See* Senate Judicial Proceedings Committee, Floor Report of Senate Bill 312 (1994). One of the reform measures it adopted empowered the court to order a parent to pay for the medical support and neonatal expenses of a child. 1994 Md. Laws ch. 113. The Legislature enacted this new power of the courts as an addition to the child support provisions of Title 12, under which all other court orders related to the maintenance and support of a child were located. *Id.* The placement of the court's authority to order the payment of medical support and neonatal expenses under the child support provisions of Title 12 demonstrates that the Legislature also authorized these expenses to be treated as child support.

One provision under Title 12 of the Family Law Article provides for an award that may not be treated as child support, however. Section 12–103(a) allows the court, at its discretion, to award counsel fees to "either party" of a domestic case where issues of child support, custody, or visitation are involved. Code, § 12–103(a) of the Family Law Article. Section 12–103(a), though, does not concern attorney's fees that a court may award to a guardian *ad litem. See Petrini,* 336 Md. at 467–68, 648 A.2d at 1022–23. Rather, it refers to any counsel fees accrued by one *party* in applying for or defending a matter involving child support, child custody, or visitation. Code, § 12–103(a) of the Family Law Article. The party, therefore, rather than the child, receives the immediate benefit from an award under this section, unlike the expenses the Legislature addressed under Section 12–101(d)(ii), which governs medical support and neonatal expenses, and Section 12–102(b), which governs orders to required health insurance coverage for a child. Thus, courts may not treat an award under Section 12–103(a) as child support.

Utilizing the fact that health insurance premium costs, medical support costs, and neonatal costs are not specifically included within the Guidelines but may be considered child support, Goldberg argues that we then should extend the list

of what may be treated as child support beyond Title 12 to guardian *ad litem* fees. This argument misconstrues the Legislature's statutory scheme for calculating child support.

We have found no evidence in the legislative history of the child support and guardian *ad litem* provisions suggesting that the fees awarded for guardian *ad litem* service were ever intended to be treated as child support. Rather, the history of the child support provisions suggest that the Legislature declined to include guardian *ad litem* fees as child support. The statutory basis for guardian *ad litem* fees originated in 1976 with the enactment of a Maryland Code, § 3–604 of the Courts & Judicial Proceedings Article (1976), the provisions of which were designed to assist the court in determining the best interest of the child. *See* 1976 Md. Laws ch. 250; *Nagle v. Hooks,* 296 Md. 123, 128, 460 A.2d 49, 51–52 (1983).[4] In 1984, when the General Assembly completely overhauled the Maryland Code and created the Family Law Article, it placed the guardian *ad litem* provisions under Title 1 rather than in the child support provisions of Title 12. *See* 1984 Md. Laws ch. 296, § 2 (codified under Code, § 1–102 of the Family Law Article). When the Legislature, in 1989, developed the Guidelines, it excluded guardian *ad litem* fees from the child support calculus. *See* 1989 Md. Laws ch. 2. To this day, despite numerous other amendments to the Family Law Article and, specifically, to the child support provisions of Title 12, the guardian *ad litem* provisions remain separate from the child support provisions. Code, § 1–202 of the Family Law Article.

---

4. The Court of Special Appeals, in *Leary v. Leary,* 97 Md.App. 26, 40–41, 627 A.2d 30, 36–37 (1993), discussed the traditional role that guardians *ad litem* play in their service to the court:

> When the court appoints an attorney to be a guardian ad litem for a child, the attorney's duty is to make a determination and recommendation after pinpointing what is in the best interests of the child. The attorney who assumes the traditional guardian ad litem role has a responsibility primarily to the court and therefore has absolute immunity for "judicial functions," which include testifying and making reports and recommendations. This more traditional role is defined by the court and the attorney looks to the court for direction and remuneration.

*Id.* (citation and footnote omitted).

The Legislature, in fact, recently rejected a proposed amendment to the Guidelines that would have allowed the court to include guardian *ad litem* fees in the computation of child support under the Guidelines. Md. H. 626, 2002 Gen. Assembly (Feb. 25, 2002) (receiving an unfavorable report from the House of Delegates Judiciary Committee).

The fact that the child support provisions of Title 12 contain all of the possible sources of child support and that the Legislature, time and time again, has preferred to maintain the guardian *ad litem* provisions under a different title supports the conclusion that the Legislature did not intend guardian *ad litem* fees to be included as child support.[5] Allowing such a treatment would be imputing to the Legislature an intent that never existed.[6]

### 2. *Contempt Proceedings*

■■■ Goldberg relies heavily on the bankruptcy court's determination that, for purposes of bankruptcy law, attorney's

---

5.  Maryland Rule 9–206 (2002), which provides the worksheet that Circuit Courts must use to compute child support, reflects this Court's determination that guardian *ad litem* fees are not to be treated as child support.

6.  Not only does Goldberg lack support for his position in the structure of the statute, but the purpose of the Guidelines also undermines his position. As we noted above, the Legislature sought to promote consistency in child support awards by requiring the use of a limited universe of variables to determine award amounts. *Petrini*, 336 Md. at 460, 648 A.2d at 1019; *Voishan*, 327 Md. at 322, 609 A.2d at 321. The Legislature, through these provisions, deliberately restricted the trial court's discretion in determining a child support award.

Inapposite to the restrictive purposes of the Guidelines, the statute governing guardian *ad litem* fees does not reflect the same specificity of the Guidelines as to the reasonableness of the expenses or income limits. Section 1–202, which provides for the appointment of the guardian *ad litem*, offers the Circuit Court no guidance regarding what considerations should govern the extent of the award of guardian *ad litem* fees. The award of guardian *ad litem* fees, furthermore, is not determined based on financial resources available to the parents. Had the Legislature intended the court to include guardian *ad litem* fees in an order to pay child support, it could have created specific measuring devices, like those under the Guidelines, to define how fees of the guardian *ad litem* would be computed as child support.

fees are "in the nature of child support" and, therefore, not dischargeable debts. *In Re Blaemire*, 229 B.R. 665 (Bankr. D.Md.1999). He argues:

> It would seem incongruous to suggest that a judgment for the fees of a guardian *ad litem* will not be discharged in Bankruptcy because they are in the nature of child support, but, at the same time, may not be collected from the judgment debtor because under state decisional authority they are not in the nature of child support.

Petitioner's Brief at 14.[7] We reject this argument because it fails to consider the consequences of allowing guardian *ad litem* fees to be treated as child support under Maryland law. The policy consequence that we find most persuasive is that such a characterization could subject an obligated parent to potential imprisonment under the court's contempt powers.

Under bankruptcy principles, debts may be discharged unless they are specifically excepted under the bankruptcy code. 11 U.S.C.A. § 523 *et seq.* (2002). These specific exceptions reflect Congress's judgment that the creditor's interest in recovering full payment of debts in these categories outweighs the debtor's interest in obtaining a complete fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 222, 118 S.Ct. 1212, 1218, 140 L.Ed.2d 341, 348 (1998). In Congress's estimation, therefore, debts subject to discharge maintain the lowest priority for the debtor to satisfy. That is, bankruptcy law provides no

---

7. Goldberg correctly observes that the majority of bankruptcy courts and federal circuits characterize guardian *ad litem* fees as child support for purposes of bankruptcy law. *See Blaemire*, 229 B.R. at 668 (listing some of courts that have decided the issue). The law, by far, is not settled on the subject, however. The court in *In re Lanza*, for example, faced the issue and reasoned that because the guardian *ad litem*'s service involved representing a child in a *custody* dispute, the service was not in the nature of child *support*. 100 B.R. 100, 101(Bankr.M.D.Fla.1989). The guardian's fees, the court held, were dischargeable debts under bankruptcy law. *Id.* For a comprehensive collection of cases in which courts have addressed the issue of discharging guardian *ad litem* fees in bankruptcy, see Diane M. Allen, Annotation, *Debts for Alimony, Maintenance, and Support as Exceptions to Bankruptcy Discharge, Under § 523(a)(5) of Bankruptcy Code of 1978 (11 USCA § 523(a)(5))*, 69 A.L.R. Fed. 403, § 6a (2002).

preference for the debt, and the creditor must abstain from bringing any claim for it. *See* 11 U.S.C.A. § 524 (2002) (providing the effects of discharge). It comes as no surprise, then, that obligations "in the nature of child support" are excepted from discharge under federal bankruptcy law. 11 U.S.C.A. § 523(a)(5). The Bankruptcy Court's determination that guardian *ad litem* fees are "in the nature of child support" accordingly places the priority of such fees above the relatively low status of dischargeable debts.[8]

Goldberg, however, asks this Court to elevate the status of guardian *ad litem* fees to the highest and most protected status an obligation can hold under the Maryland law, child support. As we noted above, when an obligation is characterized as child support, that obligation receives the protection of the court's contempt powers. *Lynch*, 342 Md. at 519, 677 A.2d at 589. The obligation to pay child support is exempt from the Maryland Constitution's prohibition against imprisonment for debt. Md. Const. Art. III, § 38. Thus, as with the failure to comply with any equitable order of the court, failure

---

**8.** Federal bankruptcy law does not, in any way, bind this Court in making decisions regarding matters of state law. Likewise, decisions of the bankruptcy courts, although often guided by state law, rest ultimately on the interpretation of Title 11 of the United States Code and its corresponding regulations. *See In re Williams*, 703 F.2d 1055, 1056 (8th Cir.1983) ("Whether a particular debt is a support obligation . . . is a question of federal bankruptcy law, not state law."). Unique policy considerations of federal bankruptcy law underlie all bankruptcy court interpretations of the bankruptcy code.

Not only is the bankruptcy court analyzing guardian *ad litem* fees in a vastly different context, but it is also interpreting different codified language. Under the relevant bankruptcy statute, 11 U.S.C.A. § 523(a)(5), a debt to a child, spouse, or former spouse is not discharged if it is "actually in the nature of alimony, maintenance or support." The language of this exception to dischargeable debts in bankruptcy reaches much farther than 5 C.F.R. § 581, the regulation we have been asked to interpret. 5 C.F.R. § 581.307 limits its reach to attorney's fees that a state law has authorized to be expressly *included* as child support. The inquiry under the regulation, therefore, does not involve the character of the service provided by the attorney, but, rather, the label that state law has placed on the attorney's service. In Maryland, the legislature declined to label guardian *ad litem* fees as child support.

to comply with a court's order to pay child support might land the debtor in jail. *Lynch*, 342 Md. at 519, 677 A.2d at 589.[9]

The possibility of receiving such a harsh penalty could lead to unjust consequences. The first is obvious; for the first time, the award of attorney's fees could result in imprisonment of a parent. In addition, if guardian *ad litem* fees were enforceable by contempt like child support, an obligation to pay attorney's fees could take precedence over most other financial obligations, one of which might include supporting dependent children who reside with the obligated parent. If the legislature intended this collection mechanism to apply to guardian *ad litem* fees, it would have expressly categorized those fees as child support. It did not. We refuse to create such a preference for guardians *ad litem* in the absence of legislative authority.

The Court of Appeals of Texas, the only other state appellate court to have addressed the issue, also determined that guardian *ad litem* fees should not be characterized as child support. *Ex Parte Hightower*, 877 S.W.2d 17, 18 (Tex.Ct.App. 1994). In *Hightower*, a trial court's award of guardian *ad litem* fees had described the fees as child support. *Id.* at 19. The court used its contempt powers to jail the mother who had failed to pay the award. *Id.* The mother applied to the Texas Court of Appeals for a writ of habeas corpus, arguing that the trial court violated the state constitution by imprisoning her for a debt. *Id.* The court of appeals agreed. Based on the lack of "statutory support," the court held that "the trial court did not have authority to enforce payment of the [guardian *ad litem*] fees and expenses by contempt." *Id.* at 21. Similarly, we find no statutory support in Maryland that

---

9. Under Maryland law, alimony receives the same protections as child support. An order to pay alimony, like a child support order, is exempt from the Maryland Constitution's prohibition against imprisonment for debt. Md. Const. Art. III, § 38 (2001). It also may be enforced through the court's contempt powers, and failure to pay could result in imprisonment. Md. Rule 15–207(e) (2001); *see Lynch*, 342 Md. at 519, 677 A.2d at 589.

would authorize a trial court to subject an obligated parent to its contempt powers by characterizing guardian *ad litem* fees as child support. Because the General Assembly is the guiding authority for matters of child support in Maryland, we hold that the Circuit Court did not have authority to treat guardian *ad litem* fees as child support.[10]

## C. *Conclusion*

Our analysis of 5 C.F.R. § 581 and the Maryland's statutory scheme for child support leads us to conclude that a court does not possess the authority under Maryland law to treat guardian *ad litem* fees as child support.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.*

---

10.    Goldberg also points to the common law doctrine of necessaries to support his position that attorney's fees should be considered a form of child support.    He refers to *Carter v. Carter,* a case in which this Court held that a mother could not recover from the father attorney's fees "arising from her effort to prevent the father from obtaining the exclusive custody of [their minor] child."    156 Md. 500, 509, 144 A. 490, 494 (1929).    The Court, in dicta, also recognized a father's duty to reimburse the mother for fees she paid for an attorney's service for the welfare of the child. *Id.* This duty, however, was based on the outdated notion that a "father remains primarily, and the mother secondarily, bound to support and maintain the infant." *Id.* at 508, 144 A. at 493. We have since rejected this archaic notion. *See Ross v. Hoffman,* 280 Md. 172, 176, 372 A.2d 582, 586 (1977).

Moreover, the services of guardians *ad litem* are not encompassed in what the court in *Carter* considered necessary.    The *Carter* court regarded as necessaries any services "reasonable and necessary for the protection or enforcement of the property rights of the minor or his personal protection, liberty, or relief." *Carter,* 156 Md. at 509, 144 A. at 494 (citing 31 C.J. 1079).    The Court derived this language from a 1923 edition of *Corpus Juris,* which noted that, despite the general rule that attorney's services are not to be regarded as necessaries, an attorney's service could be considered necessary if it was rendered to protect the property or civil rights of the infant or to defend the infant in a criminal action.    31 C.J. 1079–80 (1923).    Services performed under Section 1–102 of the Family Law Article do not involve defending criminal charges or protecting property rights.    Rather, as we discussed above, the modern-day guardian *ad litem* assists the court in determining the best interest of the child in domestic disputes over child custody, visitation, and support. *See Nagle,* 296 Md. at 128, 460 A.2d at 51–52.