In re Hyo Jin MOON, Debtor.

Nansook Hong MOON, Appellant,

v.

Hyo Jin MOON, Appellee.

Nos. 97 Civ. 0449 (CLB), 96B–21929(ASH).

United States District Court,
S.D. New York.

July 14, 1997.

Weld D. Henshaw, Douglas R. Gooding, Thomas M. Tomlinson, Choate, Hall & Stewart, Boston, MA, for plaintiff.

Cora J. Glasser, New York City, for defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

Appellant Nansook Hong Moon appeals pursuant to 28 U.S.C. § 158(a) and 28 U.S.C. § 1334 the Order of the Bankruptcy Court which granted Debtor Hyo Jin Moon an automatic stay from actions taken by the appellant against the Debtor in the Massachusetts Probate Court.

### Facts

On September 12, 1996, Hyo Jin Moon ("the Debtor") filed in this District his voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* At that time, he was incarcerated in Massachusetts under an Order of the Middlesex (Massachusetts) Probate and Family Court (the "Probate Court"). The Probate Court had incarcerated the Debtor for his failure to comply with repeated orders concerning the payment of support awards to his wife, Nansook Hong Moon. ("Ms.Moon").

The actions in the Probate Court commenced on August 9, 1995, when Ms. Moon filed a Complaint For Protection From Abuse with the Probate Court. The Probate Court then ordered the Debtor to refrain from abusing Ms. Moon, from contacting her or their children, and to stay away from her wherever she might be. The Probate Court awarded sole legal custody of the children of the marriage to Ms. Moon.

On October 25, 1995, Ms. Moon and the Debtor entered into a stipulation which provided Ms. Moon with temporary support and which was incorporated into a court order. Pursuant to that stipulation Debtor agreed to pay the sum of $8,500 per month as child support to Ms. Moon. On February 28, 1996, the parties participated in another hearing in Probate Court concerning an adjustment of the support and financing for Ms. Moon's divorce proceedings against the Debtor. At the end of the proceeding the Probate Court ordered the Debtor to continue paying $8,500 per month to Ms. Moon and to pay Ms. Moon $65,000 for an attorney in her divorce proceeding. From March 1, 1996, to August 1, 1996, Debtor paid $8,500 per month in support. However, the Debtor refused to pay the $65,000 for attorney fees.

On April 25, 1996, Ms. Moon filed a Complaint for Contempt relating to the Debtor's failure to pay the fee award. On July 17, 1996, the Probate Court conducted a factual inquiry relating to the Complaint, with regard to the ability of the Debtor to pay the fee award. The Probate Court reviewed financial statements submitted by the parties, determined that the Debtor could pay the fee award and sentenced the Debtor to 30 days in jail or until the fee award was paid. The Debtor immediately petitioned the Massachusetts Appeals Court for a stay of the

Probate Court's Order. After a hearing, the Appeals Court denied the request for a stay.

On August 14, 1996, the parties again appeared before the Probate Court on a status review of the contempt judgment. Debtor represented that he had no income, no assets, and only liabilities. During his month in jail, Debtor had himself terminated from his employment and removed as a beneficiary of his family trust. The Probate Court found that Debtor did have funds and had taken these steps to defeat the order. The Probate Court sentenced Debtor to sixty days in prison or until the fee award was paid. The Probate Court ordered a status review hearing for September 13, 1996.

On September 12, 1996, Debtor filed his Chapter 7 petition in this District, listing total assets of $2,000 and liabilities totaling $585,000. Debtor also filed a Defendant's Memorandum In Support of Automatic Stay Provisions of Bankruptcy Code and a Suggestion of Bankruptcy with the Probate Court. On September 13, 1996, the parties appeared before the Probate Court as scheduled. Despite Debtor's argument that his filing in this District stayed the Probate Court case, the Probate Court refused to release the Debtor from jail or from the Contempt Order, and ordered Debtor to pay $73,500 and scheduled a hearing for October 9, 1996.

On September 18, 1996, the Debtor filed with the Bankruptcy court a "Motion for an Order Enforcing an Automatic Stay And For The Bankruptcy Court to Assume Jurisdiction over the Subject Matter of this Motion". On September 20, 1996, the Bankruptcy Court held a conference and instructed the parties to submit papers:

"that focus specifically on the 362(b)(2)(B) (of the Bankruptcy Code) issue ... what it specifically says is that the stay does not operate with regard to the collection of alimony, etcetera from property that is not property of the estate. Question: Is the converse of that proposition not so, namely that the stay does operate with regard to collection of maintenance, support, etcetera that is the property of the estate, i.e. the Debtor's property? ... Is that the end of the question? Does that end the inquiry,

and mandate a conclusion that the stay is being violated by continuing to keep Mr. Moon in jail?"

On October 4, 1996, the Bankruptcy Court issued its Decision. The Bankruptcy Court determined that the automatic stay applied to Ms. Moon's enforcement of the Contempt Order, that Section 362(b)(2)(B) of the Bankruptcy Code did not apply to the Contempt Order, and that the Bankruptcy Court would neither abstain from the dispute nor grant Ms. Moon relief from the stay to continue enforcement of the Contempt Order.

On October 8, 1996, the Bankruptcy Court entered an order declaring the automatic stay to be applicable to the Contempt Order, and directing her to request that the Probate Court release the Debtor from his incarceration pursuant to the Contempt Order. Debtor has since been released from prison. Moreover, Debtor's family has paid Ms. Moon $50,000 of the owed fee award, however, the Debtor has refused to pay the remaining $15,000. This appeal followed.

*Discussion*

The conclusions of law made by the Bankruptcy Court are reviewed de novo by this Court. *In re Porges*, 44 F.3d 159, 162 (2d Cir.1995). In the present case, the Bankruptcy Court did not conduct an evidentiary hearing with regard to the contested matter and did not make any express findings of fact. To the extent that the Bankruptcy Court may have been understood to make certain factual determinations, such findings are subject to review under a clearly erroneous standard. *In re Brody*, 3 F.3d 35, 38 (1993).

■ The Contempt Order issued by the Massachusetts Probate Court is not subject to review by the Bankruptcy Court and must be presumed to be valid and enforceable under Massachusetts law unless or until the Order is reversed, vacated, or modified by a Massachusetts state appellate court or the Supreme Court of the United States. *See e.g., Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir.1987).

 The Bankruptcy Court's statements during the September 26, 1996 hearing on the Stay Motion suggest that the Bankruptcy Court failed to give full faith and credit to the rulings of the Probate Court:

> THE COURT: And yet, because the facts alleged in the Debtor's petition, that he has no assets, which one might think would undermine the incarceration order, the contempt order under the most traditional and elementary principles of law, nevertheless, because of the no asset fact assumption here, then that bootstraps the contempt order, which has no legal underpinning under state law, into a basis for an exception to the stay . . .

On July 17, 1996, the Probate Court had held an evidentiary hearing with regard to Ms. Moon's Complaint For Contempt against the Debtor. At that hearing, the Probate Court received evidence and heard witness testimony regarding the Debtor's ability to pay the fee award. At the conclusion of that hearing, the Probate Court entered an order finding that the Debtor was willfully in contempt for failing to pay the fee award. On August 14, 1996, the Probate Court held another hearing regarding the Contempt Order. The Debtor argued that he had no assets and no income as result of his self-induced removal as a trust beneficiary. However, the Probate Court found as a fact "that funds are available instantly to pay counsel fees in this case."

 The Bankruptcy Court was required to give full faith and credit to both the Contempt Order and the underlying factual findings that were necessary for the entry of the Contempt Order, particularly where, as here, the Bankruptcy Court did not itself conduct an evidentiary hearing with regard to the Debtor's ability to pay the fee award. *See, e.g., Kelleran,* 825 F.2d at 695.

It appears that the Bankruptcy Court did not give any weight to the Probate Court's finding that the Debtor had the ability to pay the fee award either by having himself reinstated in the family trust or by resuming his employment with his family's ministry. Contrary to the implied finding of the Bankruptcy Court, such funds would not constitute the "property of third parties over which the Debtor has no objectively discernible control." Such funds constitute post-petition assets, found by the Probate Court to be directly under the control of the Debtor, which are not protected by the Debtor's Chapter 7 Bankruptcy filing.

Accordingly, the order of the Bankruptcy Court appealed from is reversed, and Ms. Moon may resume her efforts in Massachusetts to enforce the Contempt Order against the Debtor.

SO ORDERED.