831 A.2d 1067

**Lawrence Melvin KLASS**

v.

**Kathy Ann Hartman KLASS.**

**No. 125, Sept. Term, 2002.**

Court of Appeals of Maryland.

Sept. 8, 2003.

Michael J. Moran, Lutherville, for petitioner.

Kathy Ann Hartman Klass (Pro Se), for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

WILNER, Judge.

On June 29, 2001, the Circuit Court for Frederick County entered a judgment that, among other things, divorced petitioner, Lawrence Klass, from his wife, Kathy, awarded to Kathy custody of the three minor children, $1,600/month alimony, $1,200/month child support, a $100,000 monetary award, the entire value of Lawrence's profit sharing plan with Merrill Lynch, and $12,863 toward her attorney's fee, established arrearages of *pendente lite* alimony ($28,800) and child support ($19,200), and reduced some of those directives to money judgments. The judgments were affirmed by the Court of Special Appeals, in an unreported opinion.

We granted *certiorari* to consider two issues: whether the judgments should be vacated because certain pre-judgment orders and proceedings occurred during a period when an automatic stay under § 362 of the Bankruptcy Code (11 U.S.C. § 362) was in effect, and whether petitioner received adequate notice of the trial date. We shall affirm in part and reverse in part the judgment of the intermediate appellate court.

## BACKGROUND

The Klasses married in 1984, had three children, and separated on December 31, 1998. In April, 1999, Kathy filed a complaint for limited divorce based principally on allegations of cruel and harassing treatment by Lawrence but also alleged a voluntary separation. In addition to her request for limited divorce, she sought a panoply of ancillary relief. In July, the court entered a *pendente lite* order that, among other things, granted sole custody of the children to Kathy, awarded her exclusive use and possession of the family home, directed Lawrence to return within 30 days all of the family use personal property that he had taken from the home, gave Kathy exclusive use and possession of all family use personal

property, directed that *pendente lite* child support be established in accordance with the child support guidelines, and appointed a guardian *ad litem* for the children. Both parties filed exceptions to the order but, in September, 1999, prior to a hearing on those exceptions, they reached an agreement, entered as a consent order, that confirmed most aspects of the *pendente lite* order and set the child support at $1,200/month and alimony at $1,600/month. Lawrence did not return the family use personal property, and he ceased his payments of alimony and child support about two months later.

In September, 2000, he filed a complaint, in this action, for absolute divorce on the ground of voluntary separation. Trial was initially scheduled for October 30, 2000, but, at Lawrence's request, the trial date was postponed until January 3, 2001, apparently because Lawrence was in a mental institution in California.[1] On December 27, 2000—just a week before trial was to commence—Lawrence filed, in California, a *pro se* petition for voluntary bankruptcy under Chapter 7 of the Bankruptcy Code. Lawrence did not initially list Kathy as a creditor on the schedules he filed in the bankruptcy proceeding; nor did he inform the Bankruptcy Court of the proceeding pending in Maryland. The court was notified of the bankruptcy on January 2, 2001, whereupon trial was postponed for three months.[2]

Notwithstanding the bankruptcy proceeding and the automatic stay that proceeded from it pursuant to § 362, activity continued in the Circuit Court. After a status conference on January 3—the date trial was to have occurred—Lawrence's attorney withdrew her appearance, and a notice was sent to Lawrence to employ new counsel. On January 17, 2001, the guardian who had been appointed for the children filed a

---

**1.** On October 30, 2000, Lawrence informed the court that he had moved to California and gave the court his address there.

**2.** At some point, Lawrence retained counsel in California. On March 14, 2001, through counsel, Lawrence filed an amended schedule that listed Kathy, Lawrence's former attorney in this case, and the attorney appointed for the children as creditors.

petition for counsel fees in the amount of $4,050. On February 15, the court granted the request and entered judgment against Lawrence for that amount. On January 20, Kathy mailed to Lawrence a set of interrogatories, a request for the production of documents, and a request for admission of facts. The interrogatories and requests were never answered.

On March 29, 2001, the court scheduled trial for April 30, and a notice to that effect, in the form of a subpoena *duces tecum* issued by Kathy, was sent to Lawrence in California by certified mail. The record contains a return receipt, although the signature on it, to us, is illegible. Although Lawrence contests the adequacy of the notice of trial, he does not dispute that he received that subpoena. On March 30, Lawrence's bankruptcy lawyer sent formal notice to the court of the bankruptcy filing and that the bankruptcy court had entered a stay order pursuant to 11 U.S.C. § 362. Ten days later—on April 9, 2001—Lawrence was granted a discharge by the bankruptcy court, although an order formally closing the case was not filed until August 7, 2001.

Trial commenced, as scheduled, on April 30, 2001. Lawrence did not attend. He did, however, send to the court a "Declaration" stating that, on March 8, 2000, he had been found disabled by the Social Security Administration and that he had been receiving disability benefits since September, 2000. Based on testimony by Kathy and by a corroborating witness, a statement by the children's guardian, the consent *pendente lite* order, and admissions imputed to Lawrence by reason of the unanswered request for admissions, the court entered its judgment on June 29, 2001. The divorce was based not on the original allegations of cruel conduct but on a voluntary separation, which Lawrence had previously confirmed in his own complaint for divorce.

Lawrence appealed, complaining, among other things, that the Circuit Court erred in continuing the divorce litigation after the filing of his bankruptcy petition and that he did not receive adequate notice of the April 30 trial date. Based on the subpoena sent to him by certified mail, the Court of

Special Appeals dismissed without much discussion the notice complaint. It resolved the bankruptcy issue on the grounds that (1) actions to establish or modify alimony or child support are not subject to the § 362 stay and the fees ordered paid to the children's guardian were in the nature of child support, (2) the stay does not preclude all judicial proceedings, but only those that affect or touch on the debtor's property, and the discovery requests and subpoena sent by or on behalf of Kathy did not have that quality, and (3) a discharge terminates the § 362 stay, and, as the judgment entered by the court occurred after that date, it was not precluded by the stay. We granted *certiorari* to review those determinations. Kathy did not file a responsive brief and did not participate in oral argument.

## DISCUSSION

### I. Bankruptcy Stay

Lawrence presses his argument that "[t]he continuation of the family law action, after [he] filed his bankruptcy petition, violated the automatic stay and, consequently, all subsequent acts that occurred in the litigation are void." He urges that the stay mandated by 11 U.S.C. § 362 applies to *all* proceedings, whether or not the debt involved is dischargeable in bankruptcy, that *all* judicial activity in such proceedings is enjoined, and that any such activity undertaken in contravention of the stay—*i.e.*, absent an order of relief from it—is void. Although he recognizes that the stay does not apply to actions to establish or modify alimony or child support, he contends that the exception for those kinds of proceedings does not allow them to be coupled with any other non-exempt proceeding, and that, if they are so coupled, they too are stayed. As to the judgment itself, which was entered after the discharge, his position seems to be that (1) it is in violation of the discharge order, and (2) it is void because of the invalidity of all that led to it.

### A. *Jurisdiction to Determine Effect of Stay*

Although neither party has raised this issue, there appears to be some split of authority among Federal courts over whether any court, other than the Bankruptcy Court in which the bankruptcy proceeding is, or was, pending, has jurisdiction to determine whether action taken or proposed to be taken in a case pending in another court is subject to the automatic stay of § 362. The clearly predominant rule is that jurisdiction is concurrent, and that the court in which the non-bankruptcy case is pending may determine the effect of the stay on that case. *See In re: Middlesex Power Equipment & Marine, Inc.,* 292 F.3d 61, 66 (1st Cir.2002); *In Re Baldwin-United Corp. Litigation,* 765 F.2d 343, 347 (2nd Cir.1985); *U.S. Dept. of Housing & Urban Dev. v. CCMV,* 64 F.3d 920, 927 (4th Cir.1995); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir.1990); *N.L.R.B. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939 (6th Cir.1986); *In re Glass,* 240 B.R. 782, 787 (Bkrtcy.M.D.Fla.1999); *In re Montana,* 185 B.R. 650, 652 (Bankr.S.D.Fla.1995); *compare Gruntz v. County of Los Angeles,* 202 F.3d 1074 (9th Cir.2000) (replacing 166 F.3d 1020 (9th Cir.1999)); *Rainwater v. State of Alabama,* 233 B.R. 126, 139 (Bankr.N.D.Ala.1999); *In re Raboin,* 135 B.R. 682, 684 (Bankr.D.Kan.1991); *In re Sermersheim,* 97 B.R. 885, 889 (Bankr.N.D.Ohio 1989).

We need not consider here whether, under the so-called *Rooker–Feldman* doctrine (*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)), a State court decision resolving the effect of a § 362 stay on a matter otherwise within its jurisdiction is entitled to preclusive effect in the Bankruptcy Court or another Federal court. In conformance with the prevailing view, however, we conclude that a Maryland court has, and, indeed, must have, jurisdiction to determine, at least in the first instance, whether and how a matter properly pending before it is affected by a § 362 stay. The State court may not grant relief from the stay—that is a

matter committed exclusively to the Bankruptcy Court—but it may, when presented with the issue, determine whether, factually or legally, a stay is in effect and whether a particular action it is about to take or has already taken is subject to such a stay. Those determinations are, of course, reviewable on appeal. The issue of whether the challenged actions of the Circuit Court were legally permissible is therefore properly before us.

## B. Merits of the Issue

### (1) Alimony and Child Support

Section 362(a) provides that, when filed, a Chapter 7 bankruptcy petition operates as an automatic stay of a broad range of actions and proceedings against the debtor, among which are (1) "the commencement or continuation, including the issuance or employment of process, of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the [filing of the petition], or to recover a claim against the debtor that arose before the [filing of the petition]," (2) an act to obtain possession of or exercise control over any property of the bankruptcy estate, and (3) an act to collect, assess, or recover a claim against the debtor that arose prior to the filing of the petition.

Section 362(c)(2) provides that the automatic stay continues until the earliest of three events, one of which, in a Chapter 7 bankruptcy, is the time a discharge is granted or denied. That occurred here on April 9, 2001—three weeks before trial and more than two months before the judgment was entered. No stay was in effect, therefore, at the time trial occurred or at the time judgment was entered. That does not, of itself, resolve the issue, however. The stay precludes the "continuation" of a judicial proceeding against the debtor that was commenced prior to the filing of the petition, and clearly this action continued in various ways while the stay was in effect. What we must examine is the effect that various acts that occurred during that period have on the ultimate judgment.

■   The stay is broad in scope and is intended to give the debtor a "breathing spell" from his/her creditors, to allow time to formulate a repayment or reorganization plan, and to prevent a chaotic and uncontrolled scramble for the debtor's assets in a multitude of uncoordinated proceedings in different courts, by ensuring that all claims against the debtor, other than those exempted from the stay, will be brought in a single forum. *See Matter of Rimsat, Ltd.,* 98 F.3d 956 (7th Cir. 1996); *In re Siciliano,* 13 F.3d 748 (3rd Cir.1994); *Dean v. Trans World Airlines, Inc.,* 72 F.3d 754 (9th Cir.1995), *cert. denied,* 519 U.S. 863, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996); *In re Meis–Nachtrab,* 190 B.R. 302 (N.D.Ohio 1995); *Matter of Garofalo's Finer Foods, Inc.,* 186 B.R. 414 (N.D.Ill.1995); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49–51 (1978).

Although the stay is broad in scope, it is not unlimited. There are both express exceptions and some implied limitations as to what it precludes. Section 362(b) lists a number of acts or proceedings that are expressly exempt from the stay, among which are (1) "the commencement or continuation of an action or proceeding for the establishment or modification of an order for alimony, maintenance, or support," and (2) "the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(A)(ii) and (B). Under those provisions, a State court may proceed with an action to establish or modify an order for alimony or child support, and it may enforce the collection of alimony or child support if the collection is not from property that is part of the bankrupt estate.

Acknowledging those exceptions, Lawrence suggests that they apply only when the action before the court is devoted exclusively to the establishment or modification of alimony or support, or to the collection thereof from non-estate property, and that, if any other form of relief subject to the stay is coupled with such a claim, the exceptions do not apply and the entire action is stayed. This suggestion emanates from a statement in the House and Senate Reports that accompanied the Bankruptcy Reform Act of 1994, which, in § 304 of the

bill, added the exception for proceedings to establish or modify alimony or support. In explaining that addition, the committees noted, in relevant part:

"This section is intended to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse or child of a debtor in bankruptcy. The Committee believes that a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations.

The section modifies several provisions of the Bankruptcy Code. Subsection (b) specifies that the automatic stay does not apply to a proceeding that seeks *only* the establishment of paternity or the establishment or modification of an order for alimony, maintenance, and support."

(Emphasis added). House Report No. 103–835, Oct. 4, 1994, accompanying H.R. 5116; Senate Report No. 103–168, Oct. 28, 1993, accompanying S. 540, U.S.Code Congressional and Administrative News, 103rd Cong. Second Sess. (1994), Vol. 5 at 3363.

From the word "only," Lawrence suggests that the exception is limited to the situation where the establishment or modification of alimony or support is the sole form of relief sought in the action. Lawrence cites no authority for that proposition, but, apart from the lack of authority, the suggestion is devoid of logic. Surely Congress was aware that claims for the establishment or modification of spousal or child support are routinely included in actions for divorce or annulment, in which other kinds of relief are also sought. If the coupling of other relief with those claims would serve to render the exception non-applicable, there would be little vitality to or reason for the exception. Even *pendente lite* support could not be established or enforced. Neither common sense nor the statement of Congressional intent behind the exception supports such a reading. Although the exception for orders establishing or modifying alimony or support cannot be read to permit the court to grant other kinds of non-associated relief while a stay is in effect, it also cannot reasonably be read to preclude the very kind of relief it was

intended to allow simply because other forms of relief are also sought in the action.

■ Several parts of the court's ultimate judgment fall within that exception. The fixing of alimony and child support at $1,600/month and $1,200/month, respectively, and the determination of *pendente lite* arrearages were not precluded. Neither of those rulings constituted an attempt to collect alimony or child support from bankruptcy estate property. They constitute merely the "establishment . . . of an order for alimony, maintenance, or support," and the court was fully authorized to proceed to enter such an order even while the stay was in effect. We find no basis for disturbing those determinations.

■ The Court of Special Appeals concluded that the judgment entered against Lawrence for the fees declared payable to the guardian *ad litem* also fell within the statutory exception. We agree, but the matter bears some discussion. Alimony, support, and maintenance are dealt with in a number of contexts in the Bankruptcy Code. As noted, actions to establish or modify them or to collect them from non-estate property are excluded from the scope of the automatic stay under § 362(b). Debts for those items are also non-dischargeable under § 523.

Both sections embrace "alimony, maintenance, or support," but neither speaks directly to whether fees payable to a guardian *ad litem* appointed to represent the interests of children in divorce, custody, or child support cases are to be regarded as child support. In one respect, the exemption in § 362(b) seems, at least facially, to be broader than that in § 523, which contains certain caveats not found in § 362(b). One of the caveats in § 523 is that non-dischargeability does *not* apply to the extent that "such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support." [3] That provision necessarily requires a closer exam-

---

3. Section 523(a)(5)(A) also excludes from non-dischargeability a debt for alimony, maintenance, or support that has been assigned to an

ination of the alimony or support order, to ensure that it does not include an obligation that, however denominated, is not actually in the nature of alimony, maintenance, or support. One might suppose that a similar caveat should be implicit in § 362(b) as well, but it is not stated there, notwithstanding that both sections were amended by the same section of the same Act in 1994, for presumably the same purpose.

Although there are some decisions to the contrary, the prevailing view among Federal courts and Bankruptcy Courts seems to be that, for purposes of § 523, judgments against a debtor for fees payable to a guardian *ad litem* appointed to represent the interests of minor children in a divorce, custody, or child support case are in the nature of child support and are therefore not dischargeable. *See Peters v. Hennenhoeffer (In re Peters),* 964 F.2d 166, 167 (2nd Cir.1992) (it is generally accepted that fees incurred on behalf of a child are nondischargeable because they are deemed to be support when those fees are inextricably intertwined with proceedings affecting the welfare of the child); *Dvorak v. Carlson (In re Dvorak),* 986 F.2d 940, 941 (5th Cir.1993); *Beaupied v. Chang (In re Chang),* 163 F.3d 1138, 1140–41 (9th Cir.1998); *In re Jones,* 9 F.3d 878 (10th Cir.1993); *Miller v. Gentry,* 55 F.3d 1487 (10th Cir.1995); *Ceconi v. Uriarte,* 215 B.R. 669, 673 (Bankr.D.N.J. 1997); *Debts for Alimony, Maintenance, and Support as Exceptions to Bankruptcy Discharge under § 523(a) of Bankruptcy Code of 1978 (11 U.S.C. § 523(a)(5)),* 69 ALR Fed. 403 (1984 and 2002 Supp). The Bankruptcy Court in Maryland has so held. *See In re Blaemire,* 229 B.R. 665 (Bkrtcy.D.Md. 1999).

The Federal courts and Bankruptcy Courts have had much less opportunity to consider the issue in the context of § 362(b), so the case law in that regard is scant. It would appear to us that, for at least two reasons, the result should be the same, namely, that the establishment of liability for a guardian *ad litem's* fees or the collection of those fees from

---

entity other than the Federal, State, or local government or pursuant to § 408(a)(3) of the Social Security Act.

non-estate property is not precluded by a § 362 stay, and that is how the few Bankruptcy Courts that have considered the matter seem to have reacted. As noted, § 362 is not burdened by the express caveat added to § 523. Thus, if an order that is not precisely in the form of direct periodic monetary support for a child is regarded nonetheless as child support for purposes of § 523, there is little reason not to regard it likewise for purposes of § 362(b).

It is important also to take account of the broader connection between §§ 362(b) and 523. Although the exception in § 362(b) does not distinguish between dischargeable and non-dischargeable debts, Congress dealt with the two sections together in the 1994 Act, and the provisions in each relating to child support rest on the same stated policy of not allowing debtors to use bankruptcy petitions to avoid legitimate marital and child support obligations. In furtherance of that common purpose, if the courts regard a guardian *ad litem's* fees as non-dischargeable child support at the end of the bankruptcy proceeding, there is less reason to treat them differently during the proceeding and preclude their enforcement under § 362. That seems to be the approach of the few Bankruptcy Courts that have considered the matter. *See In re Sutton,* 250 B.R. 771(Bkrtcy.S.D.Fla.2000) (State court order to pay fees of guardian *ad litem* within 20 days, without prior determination of dischargeability of debt and without specifying whether payment may come from estate property not excluded from § 362 stay).

In *Goldberg v. Miller,* 371 Md. 591, 810 A.2d 947 (2002), we held that fees awarded to a guardian *at litem* appointed to represent children in a divorce, custody, or child support case did *not* constitute child support under Maryland law. The issue was whether the guardian, who held a judgment for such fees, could garnish the defendant's Federal retirement benefits. The applicable Federal regulation permitted garnishment for child support obligations, including attorneys' fees, but only if the awarding of attorneys' fees *as child support* was authorized by State law. We held that, although Maryland law authorized the awarding of such fees, they were *not*

in the nature of child support. We noted in that case the prevailing view among Bankruptcy Courts that such fees were nondischargeable but concluded that (1) the view of the Bankruptcy Courts did not bind us with respect to whether those fees constituted child support as a matter of Maryland law, and (2) dischargeability of any debt was a matter of Federal bankruptcy law, and considerations other than State law treatment of a guardian *ad litem's* fees may be relevant on that issue. *Id.* at 609–10, 810 A.2d at 958.

■ Unlike the situation in *Goldberg,* the issue before us here is one of Federal bankruptcy law, not Maryland statutory or common law. In conformance with what appears to be the prevailing view among the Federal and Bankruptcy Courts, we hold that, for purposes of § 362(b), fees awarded to a guardian *ad litem* for services to a child or children in a divorce, custody, or child support case constitute child support, and that an order establishing or modifying such fees or providing for their collection from non-estate property is not precluded by the automatic stay. The $4,005 judgment entered in favor of the guardian *ad litem* did no more than establish that component of child support; it was not subject to the stay.

■ Similarly, we agree with the Court of Special Appeals that the judgment entered against Lawrence for fees payable to Kathy's attorney are within the statutory exception. That is also an issue of Federal bankruptcy law. It follows logically that an award of attorney fees to a spouse in a divorce, custody, or support case has the same relationship to alimony or spousal support that an award of fees to a guardian *ad litem* for children has to child support. Most States regard attorney fees to a spouse as in the nature of spousal support, and Bankruptcy Courts have concluded that the debt for such fees is non-dischargeable under § 523. *See In re Spong,* 661 F.2d 6, 11 (2nd Cir.1981); *In re Silansky* 897 F.2d 743, 745 (4th Cir.1990); *In re Kline,* 65 F.3d 749 (8th Cir.1995); *In re Strickland,* 90 F.3d 444, 447 (11th Cir.1996); *In re Moon,* 211 B.R. 483 (S.D.N.Y.1997) (order holding debtor in contempt for

wilful failure to pay fees of debtor's wife in nature of spousal support and not subject to § 362 stay). Upon the same analysis, the establishment of such fees as occurred here would not be subject to § 362. *See In re Michaels,* 157 B.R. 190 (Bankr.D.Mass.1993).

### (2) *Other Aspects of the Judgment*

Lawrence asks that *all* judgments entered by the Circuit Court be vacated, in part because he claims to have received inadequate notice of trial and in part because the continuation of the action was barred by the automatic stay. As we have noted, the language of § 362(a) is very broad: except as provided in subsection (b) the "continuation" of any judicial action or proceeding commenced prior to the bankruptcy petition is stayed. Although that language would certainly embrace all non-exempted financial aspects of a divorce case and would seem to embrace even non-financial aspects, such as the divorce itself and custody and visitation provisions, a number of Bankruptcy Courts and at least one State court have concluded that the stay does not preclude State court judgments that simply dissolve the marriage or that provide for custody of and access to the children. In *In re Becker,* 136 B.R. 113 (Bankr.D.N.J.1992), the court held:

> "To summarize, the filing of a bankruptcy petition stays the determination in a divorce case of the interests of a debtor in property of the estate, any exercise of control over such property, and any monetary claims against a debtor other than for alimony, maintenance or support. Other aspects of a divorce case, *such as the dissolution of the marriage, child custody issues,* and collection of alimony, maintenance and support from postpetition earnings in a chapter 7 or 11 case, are not stayed."

(Emphasis added). *See also In re Schock,* 37 B.R. 399, 400 (Bankr.D.N.D.1984) ("[a] divorce petition is clearly not within the meaning of sections 362(a)(1) and 101(4)"); *In re Cunningham,* 9 B.R. 70, 71 (Bankr.D.N.M.1981); *In re Briglevich,* 147 B.R. 1015, 1019 (Bankr.N.D.Ga.1992) ("The portions of the divorce decree dissolving the marriage and dealing with non-

economic issues do not violate the stay and are valid between the Brigleviches"); *Perkins v. Perkins (In re Perkins),* 36 B.R. 618 (Bankr.M.D.Tenn.1983); *Kaylor v. Kaylor (In re Kaylor),* 25 B.R. 394 (Bankr.M.D.Fla.1982); *Frankel v. Frankel,* 274 N.J.Super. 585, 644 A.2d 1132 (1994).

■ Lawrence has cited no cases to the contrary, and we have found none. As this, too, is a matter of Federal bankruptcy law, we shall follow the view of the Bankruptcy Courts and conclude that the provisions of the judgment dissolving the marriage, awarding custody of the children to Kathy, and limiting Lawrence's access to the children were not precluded by the stay.

■ The remaining aspects of the judgment—the grant of a monetary award to Kathy, the reduction of that award to judgment, the entry of a Qualified Domestic Relations Order directing a lump sum distribution to Kathy from Lawrence's profit sharing plan with Merrill Lynch, and the grant to Kathy of use and possession of the automobile titled in both names for a period of three years—stand on a different footing. Continuation of the action with respect to those matters was clearly subject to the stay, while the stay was in effect.

There is some debate as to whether actions taken in contravention of an automatic stay under § 362(a) are absolutely void or merely voidable, but, in the context of this case, such actions must be regarded as void. The prevailing sentiment among the Federal courts and Bankruptcy Courts is that actions taken in violation of a § 362 stay are void *ab initio.* *See* 3 COLLIER ON BANKRUPTCY, § 362.11[1] (15th ed. rev.2003) and cases cited there ("Most courts have held that actions taken in violation of the stay are void and without effect."). The contrary view, that such actions are merely voidable, seems to emanate from the authority of the Bankruptcy Court under § 362(d) and (f) to annul the stay retroactively, thereby effectively validating actions taken in violation of a stay. Collier suggests that the better approach is to view the annulment option "as a means of avoiding the effect of the stay, rather than as an indication that acts taken in violation

are voidable." *Id.* We need not weigh in on that debate, for there has been no annulment of the stay that was in effect here.

Lawrence complains principally about two actions taken during the period that the stay was in effect—the filing of discovery requests by Kathy and the subpoena that she caused to be issued for his attendance at trial. Relying on *David v. Hooker, Ltd.,* 560 F.2d 412 (9th Cir.1977), the Court of Special Appeals concluded that the discovery requests did not violate the stay because they "merely sought disclosures regarding [Lawrence's] financial condition" and "did not and could not alter the status quo regarding [his] estate." If Lawrence wished to challenge the discovery, it added, he could have sought a protective order. Referencing that discussion but with no further explanation, the court also held that the subpoena did not violate the stay. This is where we part company with the intermediate appellate court, at least with respect to the discovery.

A number of courts have held, in Collier's words, that "[p]urely ministerial acts are not subject to the automatic stay." Collier, *supra,* § 362.03[3][3][e] and cases cited there. Collier notes further, however, that "given the importance of the automatic stay, the concept of purely ministerial acts should be narrowly construed to protect only those acts that are clerical in nature and do not involve the exercise of any discretion or judgment." *Id. See Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969 (1st Cir.1997). The filing of discovery by a party against the debtor with respect to a non-exempt claim against the debtor does not fall within that exception.[4] Nor does the Ninth Circuit Court's decision in *David v. Hooker, supra,* support the Court of Special Appeals

---

4. Although courts have found no violation of a stay when a debtor is ordered to attend a deposition as a witness in someone else's case, or to comply with discovery requests in a multi-defendant case in which the discovery requests pertains to other non-debtor defendants, it is implicit in those cases that one cannot force discovery upon a debtor in a debtor's own case. *In re Miller,* 262 B.R. 499 (9th Cir.2001), 46 Collier Bankr.Cas.2d 762, 37 Bankr.Ct. Dec. 284.

conclusion that discovery—at least discovery relating to non-exempt matters—is not subject to the stay. In *David,* the defendant failed to answer interrogatories and was ordered to answer them by December 16. On November 26, it filed a petition in bankruptcy. The court stayed the action but ordered the defendant to answer the interrogatories within 10 days. Eventually, it did so, but the plaintiff objected to the sufficiency of the answers. The court ordered the corporate defendant—the debtor—to file supplementary answers by May 1, and assessed the individual president of the defendant $2,000.

The court held that the order directing the bankrupt defendant to answer the interrogatories was interlocutory and not appealable. It did entertain an appeal by the president, however, from the order to pay the $2,000. In the context of his appeal, the court considered whether the trial court had jurisdiction under Fed R. Bnkr. Proc. 401(a)[5] to order the defendant to answer the interrogatories, and, for two reasons, held that such jurisdiction existed. First, the court concluded that ordering Hooker to comply with its previous, pre-stay, order to answer the interrogatories did not involve a determination of the ultimate obligation of the debtor, did not represent a ploy to harass it, and did not affect the operation of the stay of the main proceeding. Second, the court likened the order to a contempt proceeding for disobedience to a court order issued prior to the stay which, the court held, was not barred by the stay.

Whether those conclusions represent a prevailing view among the Federal and Bankruptcy Courts is not clear. The *David* court noted that it had discovered no cases addressing the issue. Even if they do, that situation is quite different from the one before us. In *David,* the motion to compel

---

**5.** FRBP 401(a) mirrored, to some extent, § 362(a). It provided that the filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of section 35(a).

discovery was filed and the initial order to comply was entered prior to the bankruptcy; the second order to answer simply enforced an earlier one that had been entered prior to the stay. In *Paden v. Union for Experimenting Colleges and Universities,* 7 B.R. 289, 292 (N.D.Ill.1980), the court distinguished *David* and stayed rulings on motions to compel discovery where the motions were filed *after* commencement of the bankruptcy.

Here, of course, we are not dealing with a ruling enforcing discovery that was requested prior to the stay. The discovery was filed on January 20, 2001, while the stay was in effect. Under Maryland Rule 2–424, Lawrence had 30 days to respond or have the facts included in the demand for admission deemed admitted. Rule 2–424(b) provides, in relevant part, that "[e]ach matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves a response signed by the party or the party's attorney." The stay was still in effect when that time expired. At trial, the court admitted into evidence the unanswered demand for admission of facts, presumably regarding the facts as admitted. Many of the requested facts dealt with Lawrence's income, bank and investment accounts, and other financial resources, which were relevant to the determination of the $100,000 monetary award made by the court and to the transfer of the balance of Lawrence's profit sharing plan account.

Responding to discovery can be onerous, time-consuming, and expensive. The interrogatories filed by Kathy are not in the record, but the demand for admission alone encompassed 54 facts. It is not, as the Court of Special Appeals suggested, for Lawrence to seek a protective order, although he certainly could have done so. Section 362(a) provides for an automatic stay of pending proceedings so that the debtor is not forced to continue the litigation in order to stay it. We hold that the discovery initiated by Kathy constituted an impermissible continuation of the proceeding, that the deemed admissions that arose while the stay was in effect were void, and that the

court therefore erred in admitting the request into evidence. That error requires reversal of all aspects of the judgment other than the divorce, the custody and visitation provisions, provisions for alimony, child support, the fees awarded to the guardian ad litem and to Kathy's attorney, and the determination of alimony and child support arrearages. It is not clear, from the record before us, whether, in light of the discharge in bankruptcy, further proceedings are permissible on those matters. That is an issue that can be addressed on remand.

## II. The Subpoena

Whether the subpoena was properly issued is irrelevant at this point. Lawrence did not comply with it and, unlike the situation with respect to the discovery, he suffered no ill effect from his non-compliance. No sanction was imposed. The only effect of the subpoena was to give Lawrence notice of the trial date, and we fail to see how that inured to his detriment. Even if the subpoena, as a subpoena, was void, the knowledge of the trial date imparted in it does not evaporate. The fact is that Lawrence knew of the trial date, which was three weeks after the stay ended, and he simply chose not to attend.

Although Lawrence has prevailed in part, we shall, in the exercise of our discretion assess all costs of the appeal against him.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM JUDGMENT OF CIRCUIT COURT FOR FREDERICK COUNTY IN PART, REVERSE IN PART, AND REMAND THE CASE TO THE CIRCUIT COURT FOR SUCH FURTHER PROCEEDINGS AS MAY BE PERMISSIBLE IN CONFORMANCE WITH THIS OPINION; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.